[Cite as *Siferd v. Siferd*, 2018-Ohio-3616.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

HEATHER M. SIFERD,

    PLAINTIFF-APPELLEE,

    v.

RONALD L. SIFERD,

    DEFENDANT-APPELLANT.

CASE NO. 5-18-05

O P I N I O N

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2015-DR-249

**Judgment Reversed in Part and Affirmed in Part and Cause Remanded**

**Date of Decision: September 10, 2018**

APPEARANCES:

    *Howard A. Elliott* and *Jeff Whitman* for Appellant

    *Garth W. Brown* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Ronald L. Siferd ("Ronald") appeals the judgment of the Domestic Relations Division of the Hancock County Court of Common Pleas, alleging the trial court did not follow the ruling of this Court in *Siferd v. Siferd*, 2017-Ohio-8624, 100 N.E.3d 915 (3d Dist.) on remand. For the reasons set forth below, the judgment of the trial court is reversed in part and affirmed in part.

*Facts and Procedural History*

{¶2} Ronald and Heather M. Siferd ("Heather") were married in 1992. Tr. 11. On August 3, 2015, Heather filed for a divorce. Doc. 1. For the duration of their marriage, Ronald's business—Siferd Plumbing, Heating, Air Conditioning Service ("Siferd Plumbing")—had been their primary source of income. Tr. 97. Doc. 63. At the time of the divorce, Ronald reported that Siferd Plumbing had business debts totaling $403,223.58 and had a negative equity of roughly $20,000.00. Tr. 247. Doc. 99. Outside of performing tasks for Siferd Plumbing, Heather was not employed from the time of her marriage until she filed for a divorce. Tr. 31, 97.

{¶3} In 2015, Heather completed a one-year long massage therapy program. Tr. 27. After she completed this program, she took the state certification test to become a licensed massage therapist but did not pass the examination. Tr. 28. By the time of the divorce proceeding, she had not retaken this examination and had not, therefore, worked as a massage therapist. This was her only vocational training.

Altogether, she had a total of $10,800.00 in student loans from this program. Ex. CC. Tr. 28, 32.

{¶4} Further, Ronald and Heather jointly owed the Internal Revenue Service $28,698.74 in joint personal income taxes. Tr. 62-63, 158, 248. Doc. 99. In 2015, Heather and Ronald filed for personal bankruptcy and were discharged in bankruptcy in September of 2015. Tr. 11-12. Doc. 99. During this time period, Ronald gambled between $23,000.00 and $24,000.00 in various casinos, resulting in a net loss of $2,000.00 in 2015. Tr. 192, 217, 284. In 2015, Heather also gambled and managed to win $5,000.00 in one gambling pool. Tr. 47. By the time of the divorce proceeding, Ronald and Heather had personal debts that totaled $361,894.50. Tr. 267.

{¶5} During the last fifteen years of their marriage, Heather received $800.00 per week from Ronald to cover living expenses for their family of four people. Tr. 130. In May of 2015, this practice ended as Ronald began to pay for expenses himself. Tr. 130. On November 25, 2015, the court issued a temporary order that required Ronald to pay for all of the expenses of their remaining minor child and to pay Heather $750.00 per month in spousal support. Doc. 40. In between filing for a divorce and the divorce hearing, Heather had several jobs. From October of 2015 to December of 2015, she was employed as a cashier at Gordon Food Service, making $9.00 an hour. Tr. 30. She then worked a temporary job at Best Buy, which lasted for one month and paid $12.00 an hour. Tr. 30. In January of 2016, she began

working for Roki America ("Roki") where she earned $16.82 an hour. Tr. 28-29. Heather left this job on February 25, 2016, because she "decided it just wasn't working." Tr. 29. By the time of the divorce hearing, Heather had not found another job and did not have any job interviews scheduled. Tr. 31.

{¶6} The divorce proceeding was held on April 19, 2016. Tr. 1. Heather testified that she would still have needed financial assistance from Ronald even if she had continued to work at Roki. Tr. 49-50. She also stated that she does not have credit cards or a savings account, leaving her with little cash on hand and struggling to pay her bills. Tr. 49. Ronald testified that he hoped Siferd Plumbing could turn a profit in the future but was unsure of the potential his company had to be profitable. According to his testimony, he was "$208,000 upside down" when his assets were subtracted from his liabilities.[1] Tr. 283.

{¶7} On May 9, 2016, the magistrate issued her findings and recommendations. Doc. 99. On July 11, 2016, Ronald filed objections to the magistrate's findings and recommendations. Doc. 115. The trial court overruled these objections on December 21, 2016, adopted the magistrate's findings, and entered a divorce decree on December 30, 2016. Doc. 132, 134. Under the judgment entry, Ronald retained Siferd Plumbing and all of the commercial real estate associated with Siferd Plumbing. Doc. 134. Since the residential real estate

---

[1] This statement is an estimation of Ronald's net worth and not the value of his business. Tr. 283. Elsewhere in his testimony, Ronald addressed the value of his business, estimating that Siferd Pluming had a negative equity of roughly $20,000.00. Tr. 247. Doc. 99.

was adjacent to the commercial property, Ronald also retained this property. Doc. 134. The trial court also made Ronald solely responsible for all of the debts of the parties, which amounted to $735,848.22. Doc. 134. These debts also included all of Heather's student loans. Doc. 134.

{¶8} The trial court then decided the issues of spousal support and child support. The magistrate found that Ronald's gross annual income was $96,113.00[2] and that Heather's potential income was $9.00 an hour or roughly $18,720.00 a year. Doc. 99. Based on these figures, the magistrate determined that Heather should pay $300.00 per month for the support of their minor child. Doc. 99. This amount was a deviation from the statutory schedule under which Heather would pay $389.50 per month. Doc. 99. The magistrate also ordered that Ronald pay Heather $2,000.00 a month in spousal support. Doc. 99. Until her minor child turned the age of majority in June of 2017, the amount of spousal support was to be reduced to $1700.00 a month to account for the $300.00 in child support that Heather was to pay Ronald each month. Doc. 99. However, beginning in July of 2017 and continuing for the next sixty months, Heather was to receive $2,000.00 per month in spousal support from Ronald. Doc. 99.

---

[2] The magistrate calculated this amount by adding the total of Ronald's annual expenses, which were $72,948.00, to the amount that Ronald admitted to gambling in 2015, which was $23,165.00. Tr. 192, 217, 284. Ronald disputed this calculation, claiming that the amount he gambled included his winnings. He testified that his net loss from gambling was only $2,000.00. However, he did not have any documentation to substantiate this claim. *See Siferd, supra*, at ¶ 4, 17, 21.

{¶9} Ronald appealed the trial court's order on January 27, 2017. Doc. 143. This Court found merit in several of Ronald's assignments of error. *Siferd, supra*, at ¶ 62. Specifically, we found that (1) that the trial court's decision to award all of Heather's student loan debt to Ronald was not supported by facts in the record; (2) that the trial court's decision to award all of Ronald and Heather's tax liabilities to Ronald alone was not supported by facts in the record; (3) that the trial court's calculation of Heather's spousal support was not supported by facts in the record; (4) that the computation of Ronald's child support obligation could, on remand, be affected if the trial court adjusted Heather's spousal support; and (5) that the deviation from the statutory schedule in child support may need to be reevaluated if the trial court adjusted Heather's spousal support. *Id.* We then remanded this case to the trial court for further consideration. *Id.*

{¶10} On January 9, 2018, the trial court issued a decision and order on the objections to the magistrate's decision. Doc. 152. The trial court determined (1) that Heather's student loan debt, in its entirety, should be reallocated to her; (2) that Ronald engaged in "financial misconduct" and that the entirety of Heather and Ronald's joint personal tax liability should, therefore, remain with Ronald; (3) that the amount of spousal support awarded to Heather was appropriate; (4) that Ronald's child support obligation did not need adjustment since the trial court found the amount of spousal support did not need recalculating; and (5) that the deviation

from the statutory amount of child support similarly did not need adjustment.  Doc.

152.

{¶11} Ronald filed his notice of appeal on March 16, 2018.  Doc. 160.  On

appeal, he raises the following assignments of error:

**First Assignment of Error**

**The trial court abused its discretion and committed reversible error when it failed to follow the dictates of the remand from the Court of Appeals arising out of the prior appeal in this case.**

**Second Assignment of Error**

**The trial court abused its discretion and committed reversible error by failing to order an equitable distribution of marital property and indebtedness based upon a finding of financial misconduct of the Appellant arising out of his gambling activities and irregularity with his business accounting practices, while at the same time, ignoring the gambling activities of the Appellee, her awareness of the Appellant gambling, where both parties were engaged in the spending of money during the marriage that they did not have and they filed two bankruptcies during the marriage to eliminate personal debt, it was erroneous to assign all of the federal and state tax to the Appellant.**

**Third Assignment of Error**

**The trial court abused its discretion and committed reversible error by ordering a spousal support award which covers nearly all of the recipient's monthly expenses while at the same time, giving no consideration to the recipient's income, or potential income in light of her voluntary unemployment.**

**Fourth Assignment of Error**

**The trial court abused its discretion and committed reversible error when it computed a deviation in the child support calculation and the obligation of the Plaintiff/Appellee, resulting**

**in a reduction of child support, as the same is not in the best interest of the minor child.**

Ronald argued his first and second assignments of error together. For this reason, we will consider them in a single analysis.

*First and Second Assignments of Error*

**{¶12}** Ronald argues that the trial court erred in finding that he had committed financial misconduct and should, therefore, receive all of the tax liability.

Legal Standard

**{¶13}** In a case where the equal division of property would be inequitable, the trial court must "divide the marital and separate property equitably between the spouses * * *." R.C. 3105.171(B). "Although Ohio's divorce statutes do not specifically articulate debt as an element of marital and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well." *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 20. "The property to be divided in a divorce proceeding includes not only the assets owned by the parties but also any debts incurred by the parties." *Forman v. Forman*, 3d Dist. Marion No. 9-13-67, 2014-Ohio-3545, ¶ 31.

**{¶14}** "Trial courts have 'broad discretion to determine what property division is equitable in a divorce proceeding.'" *Worden v. Worden*, 3d Dist. Marion No. 9-16-54, 2017-Ohio-8019, ¶ 26, quoting *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981), paragraph two of the syllabus. "An abuse of discretion is

more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7 (3d Dist.), quoting *Heilman v. Heilman,* 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 14. "When applying the abuse of discretion standard of review, this court is not free merely to substitute its judgment for that of the trial court." *Kreitzer v. Anderson,* 157 Ohio App.3d 434, 2004-Ohio-3024, 811 N.E.2d 607, ¶ 16 (3d Dist.).

> **In determining whether the trial court abused its discretion, a reviewing court should not examine the valuation and division of a particular marital asset or liability in isolation. The reviewing court must, instead, view the property division under the totality of the circumstances to determine whether the property division reflects an unreasonable, arbitrary or unconscionable attitude on the part of the domestic relations court.**

(Citations omitted.) *Siferd, supra*, at ¶ 27, quoting *Harris v. Harris*, 6th Dist. Lucas No. L-02-1369, 2004-Ohio-683, ¶ 19.

Legal Analysis

{¶15} In the previous appeal of this case, Ronald challenged the trial court's division of marital indebtedness. After examining the record, we determined that the rationale behind awarding of all of Heather and Ronald's joint personal tax liabilities to Ronald was "not apparent from the facts in the record." *Siferd, supra*, at ¶ 37. For this reason, we ordered the trial court to clarify its reasoning. *Id*. On remand, the trial court stated that Ronald had engaged in financial misconduct. Doc.

152. In support of this proposition, the trial court pointed to the "significant commingling of personal and business funds" by Ronald. Doc. 152.

{¶16} Specifically, the trial court found that Ronald's business had an "inexcusable lack of accounting" that included an "inaccurate account of business income amounts." Doc. 152. At trial, Ronald's accountant had no record of Siferd Plumbing receiving any rental income. Doc. 152. Further, Ronald's business records indicated his business expenses exceeded his business income, but he was somehow able to pay for his personal expenses with business income that had "no reserve for expenses." Doc. 152. The trial court found that these unacceptable business practices contributed to the tax liabilities that have accrued and that Ronald should, therefore, be responsible for the costs of this financial misconduct.

{¶17} After the trial court reconsidered this case on remand, the distribution of marital indebtedness remained unequal. However, the trial court has provided an explanation for why this unequal distribution is, in its judgment, equitable. Further, the trial court has identified facts in the record that support its finding that Ronald had engaged in financial misconduct. After the trial court's clarification, we do not find an abuse of discretion in this determination. For these reasons, Ronald's first and second assignments of error are overruled.

*Third Assignment of Error*

**{¶18}** In his third assignment of error, Ronald argues that the trial court, in considering the spousal support awarded to Heather, failed to follow this Court's instructions on remand.

Legal Standard

**{¶19}** R.C. 3105.18(C) "sets forth the factors that a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support." *Arthur v. Arthur*, 3d Dist. Shelby No. 17-11-28, 2012-Ohio-1893, ¶ 15. R.C. 3105.18(C)(1) reads, in its relevant part, as follows:

> **(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**
>
> **(b) The relative earning abilities of the parties;**
>
> **(c) The ages and the physical, mental, and emotional conditions of the parties;**
>
> **(d) The retirement benefits of the parties;**
>
> **(e) The duration of the marriage;**
>
> **(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**
>
> **(g) The standard of living of the parties established during the marriage;**
>
> **(h) The relative extent of education of the parties;**

> **(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**
>
> **(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;**
>
> **(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**
>
> **(l) The tax consequences, for each party, of an award of spousal support;**
>
> **(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;**
>
> **(n) Any other factor that the court expressly finds to be relevant and equitable.**

R.C. 3105.18(C)(1).

> **'Each of the factors under R.C. 3105.18(C)(1) relates, either directly or indirectly, to the obligee spouse's need or the obligor spouse's ability to pay support.' Accordingly, 'a spousal support award must balance the obligee's need for support against the obligor's ability to pay.'**

(Citations omitted.) *Roychoudhury v. Roychoudhury*, 3d Dist. Union No. 14-14-19,

2015-Ohio-2213, ¶ 19.

> **Although a trial court has broad discretion in fashioning an equitable spousal support award based upon the facts and circumstances of each case, this discretion is not unlimited. Thus, in reviewing a spousal support award on appeal, the appellate court must 'look at the totality of the circumstances and**

-12-

> **determine whether the trial court acted unreasonably, arbitrarily or unconscionably.'**

(Citations omitted.) *Barrientos v. Barrientos*, 3d Dist. Hancock No. 5-12-13, 2013-Ohio-424, ¶ 29.

{¶20} "[T]he doctrine [of the law of the case] provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). This "doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15.

{¶21} While this doctrine is "a rule of practice rather than a binding rule of substantive law," it "functions to compel trial courts to follow the mandates of reviewing courts." *Giancola v. Azem*, 2018-Ohio-1694, --- N.E.3d ---, ¶ 15, quoting *Nolan* at 3. "When a case is remanded to a trial court from an appellate court, the mandate of the appellate court must be followed." *Kaechele v. Kaechele*, 61 Ohio App.3d 159, 162, 572 N.E.2d 218 (10th Dist. 1989). "Absent extraordinary circumstances," a trial court "has no discretion to disregard the mandate" of the appellate court "in a prior appeal in the same case." *Nolan* at first paragraph of the syllabus.

Legal Analysis

**{¶22}** In this case, the magistrate's decision was filed on May 9, 2016. Doc. 99. In this decision, the magistrate determined that spousal support was appropriate. As part of this analysis, the magistrate stated:

> **Just as in the analysis of child support, the court may impute income as part of the consideration of the parties' relative earning ability for purposes of spousal support. * * * Imputing the same level of income to her as discussed in relation to child support, the plaintiff would have gross monthly earnings of $1,560.00. Based on the pay stub provided, her net income represents about 20% [sic] of her gross income, leaving her $1,248.00 monthly from imputed income.**

Doc. 99. The magistrate then concluded that "[t]he appropriate amount [of spousal support] is $2,000.00 monthly *based on [1] the plaintiff's financial needs and [2] other available imputed income*." (Emphasis added.) Doc. 99. In his prior appeal, Ronald challenged the amount of his spousal support obligation as excessive.

**{¶23}** On review, we began by considering the spousal support award in light of the magistrate's first reason: Heather's financial needs. Doc. 99. The magistrate found that Heather was voluntarily unemployed because she quit a job at Roki that paid $16.82 an hour or roughly $2,915.00 a month. Heather testified that her monthly personal expenses were $2,025.00 per month at the time of the divorce proceeding. Thus, her wages from Roki would have been more than sufficient to cover her monthly expenses and indicated that Heather was capable of providing for some of her own support. Under the spousal support order, however, Ronald paid

for all but $25.00 of Heather's monthly expenses. This amount of spousal support did not appear to factor in the ways in which Heather voluntarily contributed to her situation of financial need by quitting her job.

{¶24} Second, we considered the fact that the magistrate stated that the spousal support amount was based upon Heather's imputed income. Doc. 99. During their marriage, Heather was able to cover "household expenses for all four family members when she was receiving $3,200.00 monthly [from Ronald]." Doc. 99. The magistrate determined that Heather's imputed gross income was roughly $1,560.00 a month and that Heather's imputed net income was roughly $1,248.00 a month.[3] Doc. 99. Once the spousal support is added onto Heather's imputed monthly income of $1,560.00, Heather has, according to the magistrate's numbers, $3,560.00 a month in gross income and $3,248.00 a month in net income. Both of these sums are larger than the amount she spent each month to cover the expenses of four people while she was married. Thus, while the magistrate stated the amount for the spousal support was based upon Heather's imputed income, this stated rationale is not consistent with the facts presented by the magistrate.

{¶25} Since the two reasons purportedly supporting the amount of Ronald's spousal support obligation did not appear to be consistent with the facts recited by the magistrate, we turned to examining the spousal support award in the larger

---

[3] These numbers are based on the imputed income that the magistrate calculated. The magistrate calculated that Heather, based upon her skill set and work experience, could earn $9.00 an hour or a gross annual income of $18,720.00. The magistrate then determined that Heather's net income was 80% of her gross income.

-15-

context of this case. Ronald and Heather brought more debts than assets to this divorce proceeding. The trial court had to allocate $736,028.22 in debts and $406,100.00 in assets. Doc. 99. In the end, Ronald received all of the debts.[4] Ronald was awarded $406,100.00 in assets as these assets were comprised of the real estate and equipment associated with Siferd Plumbing. Ex. KK. Tr. 284. Heather, on the other hand, received a car and some personal property but was not awarded any of the debts that were incurred during the course of the marriage.[5]

{¶26} Thus, when Ronald's spousal support obligation is viewed in the context of the entire case, the trial court order makes Ronald responsible for both of their past debts, as well as for both of their personal living expenses for the next five years. For this reason, we determined that the larger context of this case did not clarify the rationale behind this award. Thus, we found that the amount of the spousal support award was not supported by the record and was an abuse of discretion. In our decision, we stated that "the trial court must reconfigure the amount of spousal support that Ronald is obligated to pay Heather * * *." *Siferd, supra*, at ¶ 56.

{¶27} On remand, however, the trial court declined to modify the award of spousal support or clarify how the amount of this award is justified by the rationale

---

[4] This included all of Heather's student loan debt, which totaled $10,800.00. Ex. CC. Tr. 32. On remand, the trial court reallocated the student loan debts to Heather. Doc. 152. At the time we were considering the spousal support award on the earlier appeal, however, these debts were with allocated to Ronald.

[5] Heather testified that she owed her parents $30,000.00 for expenses that they covered during the pendency of her divorce. Of this sum, $23,000.00 was used as a down payment on a house. Tr. 167, 170, 175.

used by the magistrate. Doc. 152. First, the analysis of the trial court did not account for the fact that Heather's voluntary unemployment contributed to her "financial needs." In its analysis on remand, the trial court stated the following:

> **[T]he Third District reasoned that this Court failed to adequately explain why Plaintiff's income potential should not be $16.82 per hour * * *. However, in considering this issue in Defendant's third assignment of error, the Third District found no abuse of discretion in this Court's * * * determination that her potential income is $9.00 per hour * * *.**

Doc. 152. We did not examine Heather's employment at Roki in reference to the second factor reason listed by the magistrate: Heather's imputed income. Rather, we noted that, in determining a reasonable amount of spousal support, Heather's employment at Roki was relevant to the first reason listed by the magistrate: Heather's situation of financial need.

{¶28} Second, the analysis of the trial court did not account for Heather's imputed income. If it had, it would have imputed income to Heather at $9.00 an hour under R.C. 3105.18(C)(1)(b); considered the other factors under R.C. 3105.18(C)(1); determined Heather's need and Ronald's ability to pay; and fashioned a proper award. Rather, the trial court stated that the amount of this award represented "a reduction of spousal support from Defendant to Plaintiff from $3,200.00 per month to $2,000.00 per month." Doc. 152. In making this statement, the trial court clearly revealed that it did not factor in Heather's relative earning ability, i.e. her imputed income: the trial court only mentioned the funds coming

-17-

from Ronald to Heather each month. Thus, this statement does not clarify the magistrate's decision but underscores our earlier ruling on this matter.

{¶29} On remand, the trial court properly analyzed the generic appropriateness of a spousal support award. However, the issue on remand was not whether an award of spousal support was appropriate but what level of spousal support, under these specific circumstances, was appropriate. The trial court did not adjust the amount of Ronald's spousal support obligation to reflect the rationale offered by the magistrate and the facts of this specific case. For this reason, Ronald's third assignment of error is sustained.

*Fourth Assignment of Error*

{¶30} In his fourth assignment of error, Ronald challenges the trial court's decision to deviate the amount of Heather's child support obligation from the statutory schedule of $389.50 per month to the lower amount of $300.00 per month.

Legal Standard

{¶31} R.C. 3119.24, which governs the award of child support when the trial court issues a shared parenting order, reads, in its relevant part, as follows:

> **A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of**

**any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.**

R.C. 3119.24(A)(1). R.C. 3119.022 contains a worksheet in which the trial court must enter the income of the parents as the basis for the child support calculation. R.C. 3119.022. R.C. 3119.24(A)(2) gives the trial court the discretion to deviate from the level of child support prescribed by the statutory schedule if such a deviation is appropriate under the facts of that particular case.

{¶32} R.C. 3119.23(A)(2). R.C. 3119.24(B) outlines the factors to consider in the process of determining whether a deviation from the statutory schedule is appropriate. R.C. 3119.24 reads, in its relevant part, as follows:

**(A)(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.**

**(B) For the purposes of this section, "extraordinary circumstances of the parents" includes all of the following:**

**(1) The amount of time the children spend with each parent;**

**(2) The ability of each parent to maintain adequate housing for the children;**

**(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;**

**(4) Any other circumstances the court considers relevant.**

R.C. 3119.24(A)(2), (B).

**{¶33}** "There is a 'rebuttable presumption' that the amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is the correct amount of child support due. R.C. 3119.03." *Warner v. Warner*, 3d Dist. Union No. 14-03-10, 2003-Ohio-5132, ¶ 15.

> **If a court does find that a deviation is appropriate under the statutory factors, it must include three items in the journal entry: (1) the amount of child support calculated pursuant to the schedule and worksheet through the line establishing the actual annual obligation; (2) its determination that the presumed amount would be unjust or inappropriate and would not be in the best interests of the child; and (3) findings of fact supporting that determination. Court-ordered deviations from the schedule and worksheet are not permitted absent full and strict compliance with the statutory requirements.**

(Citations omitted.) *Green v. Tarkington*, 3d Dist. Mercer No. 10-10-02, 2010-Ohio-2165, ¶ 20. "An appellate court reviews child support issues under an abuse of discretion standard." *Borer v. Borer*, 3d Dist. Seneca No. 13-06-38, 2007-Ohio-3341, ¶ 8.

### Legal Analysis

**{¶34}** The statutory schedule in R.C. 3119.022 uses the income of the each parent as the baseline for determining an appropriate level of child support. In this case, the magistrate entered an annual income of $42,720.00 for Heather into the statutory schedule. The magistrate arrived at this number by adding Ronald's spousal support obligation of $24,000.00 a year to Heather's annual imputed income

of $18,720.00. For a parent with an annual income of $42,720.00, the statutory schedule lists a monthly child support obligation of $389.50. The magistrate's order deviated from the statutory schedule by requiring Heather to pay a monthly amount of $300.00. Thus, the amount Heather owes under the statutory schedule depends on her annual income. Heather's annual income, in turn, depends on the amount of Ronald's spousal support obligation.

{¶35} Previously, we found merit in Ronald's third assignment of error wherein Ronald challenged the trial court's determination as to the amount of his spousal support obligation. After the trial court first reconsiders Ronald's spousal support obligation, Heather's annual income may change, which, in turn, may affect her position on the statutory schedule and the propriety of a deviation from the amount stated in the statutory schedule. Thus, the trial court must reconsider this matter after the amount of Ronald's spousal support obligation is addressed. For this reason, Ronald's fourth assignment of error is sustained.

*Conclusion*

{¶36} Having found no error prejudicial to the appellant in the particulars assigned and argued in the first and second assignments of error, the judgment of the Domestic Relations Division of the Court of Common Pleas of Hancock County is affirmed as to these issues. Having found error prejudicial to the appellant in the third and fourth assignments of error, the judgment of the Domestic Relations Division of the Court of Common Pleas of Hancock County is reversed as to these

issues.  This matter is remanded to the trial court for further proceedings in accord with this opinion.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**