[Cite as *Mousa v. Saad*, 2019-Ohio-742.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY


EMAD YOUHANNA MOUSA,

    PLAINTIFF-APPELLANT,

    CASE NO. 9-18-12

v.

ARLET MOUNIR ISHAK SAAD,

    O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 14-DR-0033

Judgment Affirmed in Part, Reversed in Part
And Cause Remanded

Date of Decision:  March 4, 2019


APPEARANCES:

    *Paul Giorgianni* for Appellant

    *Jeff Ratliff, J.C. Ratliff, Rocky Ratliff and Todd Anderson* for Appellee

**WILLAMOWSKI, J.**

{**¶1**} Plaintiff-appellant Emad Youhanna Mousa ("Mousa") appeals the judgment of the Family Division of the Marion County Court of Common Pleas. Mousa challenges the order of the trial court on remand, following our prior decision in *Mousa v. Saad*, 3d Dist. Marion No. 9-16-43, 2017-Ohio-7116. For the reasons set forth below, the judgment of the trial court is reversed in part and affirmed in part.

*Facts and Procedural History*

{**¶2**} Mousa and Arlet Mounir Saad ("Saad") were born in Egypt and immigrated to the United States where they were married in 2005. Tr. 26. Mousa operates a medical practice called the OB/GYN Women's Health Center. Tr. 91. On January 17, 2013, Saad filed for divorce. Doc. 282. Though this action for divorce was later terminated, the evidence in the record indicates that Mousa began transferring marital funds out of several bank accounts around the time that Saad initiated divorce proceedings.

{**¶3**} On January 7, 2013, Mousa withdrew $90,000.00 from joint account #-4665 at PNC Bank. Ex. TT. He then deposited these funds into First Citizen's Bank account #-1955 and closed PNC Bank account #-4665. Ex. UU. The First Citizen's Bank account was held by Mousa Investments, LLC, which was the entity that owned the building in which Mousa's medical practice operated. Ex. KK. On

January 17, 2013, Mousa withdrew $50,000.00 from this account.[1]  Tr. 447, 449.

Ex. JJ, SS, UU.  He then issued checks to his brother, Michael Mousa ("Michael"),

who lives in Canada, from this account.  Ex. QQ, RR, SS.  Mousa transferred

$16,000.00 to Michael in this manner.  Ex. QQ, RR, SS.  On December 31, 2013,

Mousa wired the $65,051.98 that remained in this First Citizen's Bank account to

Michael and then closed this account.  Tr. 372-373.  Ex. KK, LL.

{¶4} In 2013, Mousa issued checks to Michael against his personal checking

account at J.P. Morgan Chase Bank that totaled $34,500.00.  Doc. 282.  Ex. PP.  At

trial, Mousa said that he was repaying a loan from Michael with these payments.

Tr. 422, 424.  Mousa also had a business account with Fahey Bank.  Ex. N.  During

the course of 2013, Mousa also issued checks worth $103,000.00 from this account

to Michael.  Ex. VV.  At trial, Mousa claimed that these were rent payments on the

building in which his medical practice operated.  Tr. 449.  However, the record

shows that Mousa and Saad purchased this building with marital funds.  Tr. 312-

317, Ex. AA, BB, EE. Further, Mousa did not substantiate this claim with any

supporting documentation.  Doc. 282.

{¶5} On February 19, 2014, Mousa filed for a divorce in Marion County.

Doc. 1.  After Mousa filed for a divorce, he opened a J.P. Morgan Chase Bank

account for his parents, who lived in Egypt.  This account was funded with a

---

[1] The disposition of these funds is unclear from the record.  Doc. 282.

$40,000.00 deposit. Tr. 543. Ex. JJJ. At trial, Mousa claimed that these funds belonged to his parents. Tr. 548. However, Saad was able to establish that $16,683.67 of this $40,000.00 deposit was marital income. Tr. 544, 549, 552, 556. Mousa made a number of other deposits into this account prior to the divorce hearing. Ex. KKK, LLL, OOO, PPP, QQQ, RRR, SSS. At trial, Mousa claimed that these funds belonged to his parents or were rent payments to his parents. Tr. 569, 591. Saad was able to establish that a number of deposits into this account were marital funds from a personal checking account or earnings from Mousa's practice. Tr. 593-595. Ex. PPP, SSS. By September of 2015, this account contained $106,116.16. Ex. WWW.

{¶6} Further, during the course of this litigation, Saad alleged that Mousa failed to disclose a number of assets, including Egyptian certificates of deposit worth $25,000.00; gold and silver assets worth $35,693.32; equity in the marital residence worth $120,000.00; a life insurance policy with a surrender value of $12,903.48; and BMX stock valued at $3,500. Doc. 282. Ex. U, V, CCC, DDD, CCCC, MMMM. Tr. 491, 503, 506, 524, 641. Saad also retained a certified public accountant, Bryan Daulton ("Daulton") to determine the value of Mousa's medical practice. Ex. ZZ. On December 31, 2014, Daulton assigned a value of $145,000.00 to Mousa's medical practice. Tr. 878. Ex. ZZ. At trial, Daulton testified that he based this valuation on the future earnings of the medical practice and not its total net assets. Tr. 872.

{¶7} The trial court issued a divorce decree on May 12, 2016. Doc. 224. In its judgment entry, the trial court determined that Mousa had engaged in financial misconduct and included the value of the marital funds that Mousa had dissipated or diverted in calculating the total value of the marital estate. Doc. 224. After calculating the value of the assets in the possession of each party, the trial court ordered Mousa to make an equalization payment to Saad. Doc. 224. The trial court then awarded Saad $400,000.00 in compensation pursuant to R.C. 3105.171(E)(5). Doc. 224. This divorce decree also contained an order that prohibited Mousa from "distribut[ing] money and other assets out of the Country or to friends and relatives except as Ordered herein." Doc. 224. Mousa appealed this order on June 10, 2016, raising thirteen assignments of error. Doc. 227. *Mousa v. Saad*, 2017-Ohio-7116, 95 N.E.3d 941, ¶ 14 (3d Dist.).

{¶8} In this prior appeal, Mousa's first assignment of error asserted that the trial court did "not explain the division of marital property with sufficient specificity for appellate review." *Mousa* at ¶ 17. After examining the record, this Court found this argument to be meritorious and determined that the trial court needed to issue a clarifying order. *Id.* at ¶ 22. This Court also sustained Mousa's third assignment of error, finding that the trial court did not sufficiently explain its rationale for the $400,000.00 award to Saad for Mousa's financial misconduct. *Id.* at ¶ 35. In Mousa's eighth assignment of error, he challenged the trial court order that enjoined him from disbursing funds abroad or to his friends or relatives. *Id.* at ¶ 44.

However, this Court determined that Mousa failed to brief this eighth assignment of error in accordance with the requirements of App.R. 12(A)(2). *Id*. at ¶ 46. Consequently, we overruled Mousa's eighth assignment of error. *Id*. The disposition of the first and third assignments of error rendered the remaining ten assignments of error moot. *Id*. at ¶ 32, 36, 38. On August 17, 2017, this Court remanded this case to the trial court for an order clarifying the distribution of assets and the division of marital property. *Id*. at ¶ 48.

{¶9} On March 22, 2018, the trial court issued its judgment entry. Doc. 282. The trial court found that Mousa had engaged in financial misconduct, having dissipated, diverted, or failed to disclose marital assets worth $810,279.00. Doc. 282. This $810,279.00 sum included the funds that Mousa diverted or dissipated from the marital estate before he filed for divorce and funds that he failed to disclose or dissipated after he filed for divorce. Doc. 282. After the trial court added the funds that Mousa had dissipated or concealed to the assets Mousa and Saad still had in their possession, the marital estate had a value of $1,284,921.61. Doc. 282.

{¶10} Of this total, the trial court found that Mousa had assets worth $1,022,474.35 in his possession and that Saad had assets worth $262,447.26 in her possession. Doc. 282. Thus, the trial court ordered Mousa to make an equalization payment of $380,013.55, leaving each party with $642,460.80. Doc. 282. The trial court then found that an award to Saad for Mousa's financial misconduct was appropriate. Pursuant to R.C. 3105.171(E)(5), the trial court ordered Mousa to pay

Saad $400,000.00 in compensation. Doc. 282. After this $400,000.00 award, Mousa was left with assets worth $242,460.80 while Saad had assets worth $1,042,460.81. Doc. 282.

{¶11} Appellant filed his notice of appeal on April 16, 2018. On appeal, Mousa raises the following six assignments of error:

**First Assignment of Error**

**The trial court ordered Emad to pay Arlet $400,000 pursuant to R.C. 3105.171(E)(4) and (5).**

**Second Assignment of Error**

**The trial court overvalued the marital estate by $102,800 by double counting dollars that passed through First Citizens Account #-1955.**

**Third Assignment of Error**

**The trial court overvalued the marital estate by $40,434.92 by double counting the two bank accounts of Ob/Gyn Women's Health Center, LLC.**

**Fourth Assignment of Error**

**The trial court overvalued the marital estate by $5,994.28 by overvaluing JP Morgan Chase Bank checking account #-8780.**

**Fifth Assignment of Error**

**The trial court overvalued the marital estate by $24,030 by speculating that $24,030 of cash deposited in the JPMorgan Chase Bank accounts of Emad's parents was marital property instead of his parents' money.**

**Sixth Assignment of Error**

**The trial court permanently enjoined Emad from "distribut[ing] money and other assets out of the Country or to friends and relatives except as [o]rdered [in the Decree]."**

For the sake of clarity, we will examine Mousa's second and fourth assignments of error before considering his first, third, fifth, and sixth assignments of error.

*Second Assignment of Error*

{¶12} Mousa argues that the trial court double counted monies that passed through First Citizen's Bank account #-1955 in the process of calculating the value of the marital estate.

Legal Standard

{¶13} The process of fashioning an equitable division of marital property will generally require a trial court to assign or adopt valuations for marital assets. *Gilsdorf v. Gilsdorf*, 3d Dist. Marion No. 9-13-34, 2014-Ohio-5000, ¶ 11. In determining the value of assets, the trial court "is not required to adopt any particular method of valuation." *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 27 (3d Dist.). "Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances." *Lotz v. Lotz*, 3d Dist. Auglaize No. 2-14-06, 2014-Ohio-5625, ¶ 18 quoting *Baker v. Baker*, 83 Ohio App.3d 700, 702, 615 N.E.2d 699 (9th Dist. 1992).

{¶14} "The valuation of property in a divorce case is a question of fact." *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 27.

"Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence." *Id.* at 27. If the parties to the divorce submit evidence in support of conflicting valuations, the trial court "may believe all, part, or none of any witness's testimony." *Huelskamp* at ¶ 27. Since the trial court is in the best position to evaluate the credibility of witnesses, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct." *DeWitt v. DeWitt*, 3d Dist. Marion No. 9-02-42, 2003-Ohio-851, ¶ 11.

{¶15} Financial misconduct by a party to a divorce proceeding may affect the equity of a division of property. *Welch v. Welch*, 3d Dist. Union No. 14-14-05, 2015-Ohio-1595, ¶ 13. Under R.C. 3105.171(E)(4),

> **If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.**

Thus, a "trial court is permitted to make a distributive award to compensate an offended spouse for dissipation of marital assets." *Scoles v. Scoles*, 3d Dist. Hancock No. 5-02-15, 2002-Ohio-4098, ¶ 12.

{¶16} Further, "[s]hould a spouse withdraw funds from a joint account during marriage and be unable to account for the monies at trial, the court may, in its discretion, include the funds in the marital estate." *Josselson v. Josselson*, 52

Ohio App.3d 60, 62, 557 N.E.2d 835 (8th Dist. 1988), citing *Schwenk v. Schwenk*, 2 Ohio App.3d 250, 254, 441 N.E.2d 631, 634 (8th Dist. 1982). *See DiLacqua v. DiLacqua*, 88 Ohio App.3d 48, 62, 623 N.E.2d 118 (9th Dist.) (holding that the trial court did not err by adding the value of wrongfully dissipated marital funds to the marital estate and in crediting both spouses with one half of that sum). If the spouse provides an explanation for the dispersal of these funds, "[t]he adequacy of the spouse's explanation is largely a question of credibility, and thus within the purview of the factfinder." *Josselson* at 62.

### Legal Analysis

{¶17} The facts in the record indicate that the trial court double counted $90,000.00 in the process of assigning a value to the marital estate. On December 27, 2012, Mousa opened bank account #-1955 at First Citizen's Bank. Ex. KK. On January 7, 2013, Mousa transferred $90,000.00 from PNC Bank account #-4665 to his First Citizen's Bank. Ex. TT. At trial, Mousa admitted that he removed these funds because he believed Saad was going to take this money and because he did not want her to have access to these funds. Tr. 442. The PNC Bank account was closed on the same day as the $90,000.00 transfer.[2] Doc. 282. This $90,000.00 sum was then dissipated from the First Citizen's Bank account over the course of 2013.

---

[2] PNC Bank account #-4665 was a joint account owned by Mousa and Saad. Ex. TT, UU. The First Citizen's Bank account was associated with Mousa Investments, LLC, which was the entity that owned the building in which Mousa housed his medical practice. Mousa's name alone appeared on the First Citizen's Bank account, though Saad was the pay on death beneficiary. Ex. KK.

{¶18} On January 13, 2013, which was the day that Saad filed for a divorce, Mousa withdrew $50,000.00 from his First Citizen's Bank account. Tr. 447, 449. Ex. JJ, SS, UU. The trial court found that "[t]he disposition of this [$50,000.00 sum] is unknown as [Mousa] provided no testimony as to its use or location." Doc. 282. Mousa then issued three checks to Michael that drew $18,000.00 out of Mousa's First Citizen's Bank account. Ex. QQ, RR, SS. The first check was for $9,800.00. Ex. RR. At trial, Mousa claimed that this was a "Christmas gift" to his brother. Tr. 434. The second check was for $3,000.00. Ex. QQ. The memo line of this check read "thank you." Ex. QQ. The third check was for $3,200.00. Ex. SS. Again, the memo line read "thank you." Ex. SS. On December 31, 2013, Mousa wired the $65,051.98 in this account to Michael and then closed account #-1955 at First Citizen's Bank.[3] Ex. KK, LL. Tr. 372-373. At trial, Mousa claimed that this $65,051.98 was a "present" for his brother. Tr. 377. Altogether, Mousa transferred $83,051.98 from this account to Michael. Ex. LL, QQ, RR, SS.

{¶19} At the time of the divorce hearing, both the PNC Bank account and the First Citizen's Bank account were defunct. Doc. 282. Finding that Mousa had dissipated the funds in both of these accounts, the trial court imputed a value of $90,000.00 to the PNC Bank account and a value of $115,051.98 to the First

---

[3] The bank deducted $51.00 from the $65,051.98 that Mousa transferred to Michael in order to cover the costs of a service fee. Ex. KK, LL.

Citizen's Bank account.[4] Doc. 282. The trial court then added $205,051.98 to the marital estate to account for the funds that Mousa transferred out of PNC Bank account #-4665 and J.P. Morgan Chase Bank account #-1955. Doc. 282.

{¶20} However, the trial court did not account for the fact that the proceeds of the PNC Bank account funded the First Citizen's Bank account. In calculating the value of the marital estate, a value should not have been assigned to the defunct PNC Bank account because, contrary to the trial court's finding, Mousa did not dissipate the funds from the PNC Bank account when he transferred $90,000.00 into his First Citizen's Bank account. After this transfer, the funds remained in Mousa's possession and were traceable. The funds were not dissipated until Mousa began disbursing these funds from his First Citizen's Bank account. The sum total of funds improperly dissipated from Mousa's First Citizen's Bank account includes the funds transferred from PNC Bank. Thus, Mousa is correct in his assertion that these funds were double counted. The trial court erred in valuing the PNC Bank account #-4665 at $90,000.00 in its judgment entry. For this reason, Mousa's second assignment of error is sustained.

*Fourth Assignment of Error*

{¶21} Mousa claims that the trial court overvalued J.P. Morgan Chase Bank account #-8780. He argues that the trial court should have assigned a value to this

---

[4] In reaching the amount of $115,051.98, the trial court did not count the value of the checks that Mousa issued to Michael. Doc. 282, Ex. B. Rather, the trial court added the $50,000.00 that Mousa withdrew in January to the $65,051.98 wire transfer that Mousa made to Michael. Doc. 282, Ex. B.

account based on the October 16, 2015 bank statement rather than on the August 26, 2015 statement. Ex. 8, M. Since the bank account contained more money in August, Mousa asserts that his equalization payment should be accordingly reduced.

Legal Standard

**{¶22}** "Valuations of the marital property must be determined as to a specific date." *Landry v. Landry*, 105 Ohio App.3d 289, 293, 663 N.E.2d 1026 (3d Dist. 1995). "The duration of the marriage is critical in distinguishing marital, separate and post-separation assets and liabilities, and determining appropriate dates for valuation." *Eggeman v. Eggeman*, 3d Dist. Auglaize No. 2-04-06, 2004-Ohio-6050, ¶ 10. Typically, the duration of the marriage is considered to be "the period of time from the date of the marriage through the date of the final hearing in an action for divorce." R.C. 3105.171(A)(2)(a).

**{¶23}** However, a trial court "may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(b).

> **Generally, a domestic relations court should use the same set of dates in valuing marital property. However, in certain instances there may be an equitable reason for selecting a different date on which to value different marital assets. In choosing a different valuation date for certain assets, the court must adequately explain its reasons for doing so.**

(Citations omitted.) *Dewitt, supra*, at ¶ 19. The date of valuation for an asset is subject to an abuse of discretion standard. *Id*. at ¶ 20.

Legal Analysis

**{¶24}** At the divorce hearing on October 20, 2015, Mousa introduced a bank statement for J.P. Morgan Chase Bank account #-8780 from October 16, 2015. Tr. 1, 129. Ex. 8. The October 16 statement indicated that this account had funds totaling $5,576.75. Tr. 129. Ex. 8. Saad, however, introduced a bank statement from August 26, 2015 for account #-8780. Tr. 258. Ex. M. According to the August 26 statement, this account had funds totaling $11,571.03. Ex. M. In its judgment entry, the trial court relied upon the August 26 bank statement, setting the value of this account at $11,571.03. Doc. 282. The trial court then ordered half the value of this account to be credited to Saad for the purposes of the equalization payment. Doc. 282.

**{¶25}** In setting this valuation, the trial court did not use the statement in evidence that was closest to the date of the divorce hearing. Ex. 8, M. This determination does not conform to the trial court's treatment of the other bank accounts in this case. The trial court generally relied on the statement in evidence that was issued closest to the divorce hearing. Ex. N, O, P, Q, R, WWW. The trial court only used bank statements from before September of 2015 to assign valuations to the accounts from which Mousa improperly dissipated funds. Ex. TT, UU. For each of these accounts, the trial court, in its judgment entry, provided an explanation for the use of the earlier accounts: these earlier statements provided more accurate

representations of the values of these accounts because they included the dissipated funds.  Doc. 282.

**{¶26}** However, the trial court did not explain why it used a bank statement from August of 2015 to assign a valuation to account #-8780 when a bank statement from October of 2015 was available.  Doc. 282.  In this case, the trial court had the discretion to base its valuation of account #-8780 on the August bank statement provided that it gave an "adequate explanation" for its decision to do so.  *DeWitt, supra*, at ¶ 19.  In the absence of an explanation, however, the rationale of the trial court is not clear.  For this reason, we remand this issue to the trial court for clarification on this matter.  Mousa's fourth assignment of error is sustained.

*First Assignment of Error*

**{¶27}** In this assignment of error, Mousa challenges the trial court's decision to award Saad $400,000.00 to compensate her for Mousa's financial misconduct, claiming it makes the division of property inequitable.

Legal Standard

**{¶28}** Under R.C. 3105.171(E)(3), the trial court is to "require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse."  R.C. 3105.171(E)(3).  R.C. 3105.171(E)(3) grants trial courts the authority to sanction a party to a divorce proceeding who commits financial misconduct by "substantially and willfully

fail[ing]" to comply with the disclosure requirements of R.C. 3105.171(E)(3). R.C. 3105.171(E)(5). R.C. 3105.171(E)(5) reads as follows:

> **(5) If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate property, or other assets, debts, income, or expenses that are not disclosed by the other spouse.**

R.C. 3105.171(E)(5). "Financial misconduct implies some type of wrongdoing in that the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." *Link v. Link*, 3d Dist. Mercer No. 10-11-21, 2012-Ohio-4654, ¶ 27, quoting *Bostick v. Bostick*, 8th Dist. No. 90711, 2008-Ohio-5119, ¶ 22.

{¶29} Appellate courts will not reverse an award to compensate for financial misconduct absent an abuse of discretion. *Guagenti v. Guagenti*, 2017-Ohio-2706, 90 N.E.3d 297, ¶ 84 (3d Dist.). Under the abuse of discretion standard, an appellate court is not to substitute its judgment for the trial court's judgment. *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7 (3d Dist.). Thus, a mere error of judgment does not rise to the level of an abuse of discretion. *Siferd v. Siferd*, 2017-Ohio-8624, 100 N.E.3d 915, ¶ 16 (3d Dist.). "[T]o constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or capricious." *Southern v. Scheu*, 3d Dist. Shelby No. 17-17-16, 2018-Ohio-1440, ¶ 10.

Legal Analysis

**{¶30}** In this case, the trial court found that Mousa committed financial misconduct and determined that a distributive award pursuant to R.C. 31.171(E)(5) was proper. Mousa was ordered to pay Saad $400,000.00 to compensate Saad for his financial misconduct. Under R.C. 3105.171(E)(5), the trial court was empowered to give a distributive award that did not exceed "three times the value of the marital property * * * that [was] not disclosed" in violation of R.C. 3105.171(E)(3). R.C. 3105.171(E)(5). The trial court determined that Mousa "willfully, intentionally, and deliberately" "failed to disclose and diverted" $810,279.00. Doc. 282. In reaching this number, the trial court included funds that Mousa dissipated prior to filing for a divorce. Doc. 282.

**{¶31}** Mousa did not violate R.C. 3105.171(E)(3) by dissipating funds prior to his filing for a divorce. *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 32. Mousa was not required to disclose these assets under R.C. 3105.171(E)(3) because he no longer had them in his possession. *Id.* Thus, the remedies from R.C. 3105.171(E)(5) do not apply to the funds that he diverted or dissipated from the marital estate prior to filing for a divorce. "[T]he dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets" is a violation of R.C. 3105.171(E)(4). R.C. 3105.171(E)(4). The remedy for violations of R.C. 3105.171(E)(4) is for the trial court to "compensate the offended spouse

-17-

with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4).

**{¶32}** However, the fact that the trial court erroneously included monies that Mousa dissipated prior to filing for divorce in reaching the figure of $810,729.00 does not necessarily mean that that $400,000.00 award to Saad, pursuant to R.C. 3105.171(E)(5), was improper. The trial court is permitted to make an award that does not "exceed three times the value of the marital property * * * that [was] not disclosed" in violation of R.C. 3105.171(E)(3). R.C. 3105.171(E)(5). Here is a partial listing of the assets that Mousa did not disclose: Egyptian certificates of deposit worth $25,000.00; gold and silver assets worth $35,693.32; equity in the marital residence worth $120,000.00; a life insurance policy with a surrender value of $12,903.48; and BMX stock valued at $3,500. Doc. 282. These assets alone total $197,096.80. Thus, the $400,000.00 award does not violate the text of R.C. 3105.171(E)(5) as this sum does not exceed three times the total value of funds that Mousa failed to disclose.

**{¶33}** However, we will not rule on the issue of whether the award of $400,000.00 to Saad was equitable under the facts of this specific case. Rather, we remand this issue to the trial court for reevaluation for two reasons. First, our rulings on the fourth and second assignments of error may require the trial court to adjust the size of the marital estate and may affect the equity of this award. Second, the trial court must determine the value of the funds that Mousa willfully failed to

disclose in violation of R.C. 3105.171(E)(3) and the value of the funds that Mousa dissipated in violation of R.C. 3105.171(E)(4). The trial court must then determine an equitable award under R.C. 3105.171(E)(5) considering the value of the funds that were not disclosed in violation of R.C. 3105.171(E)(3). The trial court must redress any financial misconduct in violation of R.C. 3105.171(E)(4) by the remedies provided in that provision. R.C. 3105.171(E)(4). For these reasons, Mousa's first assignment of error is sustained.

*Third Assignment of Error*

**{¶34}** In its compilation of Mousa's assets, the trial court listed the total value of Mousa's medical practice and the funds in the medical practice's two bank accounts. Doc. 282. Mousa asserts that the $145,000.00 value assigned to his medical practice included the value of the bank accounts and that the trial court's list of his assets counts the value of these bank accounts twice. He alleges that this double counting resulted in the marital estate being overvalued by $40,434.92. Ex. N, O.

Legal Standard

**{¶35}** We herein reincorporate the legal standard set forth under the second assignment of error.

Legal Analysis

**{¶36}** In this case, Daulton valued Mousa's medical practice at $145,000.00. Tr. 878. Ex. ZZ. The report appraising Mousa's practice, which was admitted into

evidence, expressly states that "the business valuations are based on future earnings potential." Ex. ZZ. The report also stated that the appraisal was not based on the adjusted net assets of Mousa's practice because "earnings not net equity is the essential component of the Company's value." Ex. ZZ. At trial, Daulton testified that he did not evaluate the practice based on its liquidation value because Mousa indicated that he intended to continue operating his practice. Tr. 810, 910. Further, Daulton testified that the value of the practice's bank accounts was only used as a tool to estimate the future earnings of Mousa's practice. Tr. 909-910.

{¶37} The evidence in the record shows that the trial court relied upon a valuation method that was based upon the future earning potential of the business practice. Ex. ZZ. The $145,000.00 value assigned to Mousa's practice did not represent the adjusted net assets of the business and did not, therefore, include the $40,434.92 in the practice's bank accounts. Tr. 909-920. Ex. N, O, ZZ. Thus, the trial court did not double count the funds in the medical practice's bank accounts. For this reason, Mousa's third assignment of error is overruled.

*Fifth Assignment of Error*

{¶38} Mousa claims that the trial court, in the process of valuing one of his accounts at J.P. Morgan Chase Bank, erroneously included $24,030.00 of his parents' money in the marital estate. He requests that this amount be subtracted from the marital estate and that his equalization payment be accordingly reduced.

Legal Standard

**{¶39}** We herein reincorporate the legal standard set forth under the second assignment of error.

Legal Analysis

**{¶40}** On September 5, 2014, Mousa opened a checking account and a savings account for his parents at J.P. Morgan Chase Bank. Tr. 538. Ex. HHH, III. Mousa was listed on the account as power of attorney. Tr. 539. Ex. HHH, III. These accounts were funded with a deposit of $40,000.00. Tr. 543. Ex. JJJ. At trial, when he was asked about these funds, Mousa said: "All I remember, this their [his parents'] money. Either they bring it with them or they send it through someone or my brother. And I deposit for him." Tr. 548. However, Saad was able to produce evidence that $16,683.67 of this initial amount was obtained by Mousa for professional services rendered at his medical practice and was, therefore, marital income. Doc. 282. Tr. 544, 549, 552, 556.

**{¶41}** On cross-examination, after repeated denials, Mousa eventually admitted that this sum of $16,683.67 was comprised of earnings from his medical practice. Tr. 544, 549, 552, 556. However, Mousa maintained that the remaining $23,316.33 of the initial $40,000.00 in these two accounts was comprised of his parents' monies, but Mousa was not able to substantiate this claim. Tr. 544, 552, 556. The trial court found that Mousa "could provide no credible reason why he

-21-

would deposit considerable earnings from his employment into accounts held in the names of his parents." Doc. 282.

{¶42} Subsequently, six deposits were made into these accounts that totaled $24,030.00. Ex. KKK, LLL, OOO, PPP, QQQ, RRR, SSS. On appeal, Mousa argues that this sum of $24,030.00 was entirely comprised of his parents' funds. Mousa claimed that his parents brought the funds for several of these six deposits with them when they visited from Egypt, but the amount of funds they allegedly brought with them was greater than the total amount that they were permitted to bring through customs. Tr. 569. Further, the deposits that were from funds his parents allegedly brought from Egypt were not deposited until his parents had been in the country for several weeks and were made on several different days. Tr. 569.

{¶43} The testimony at trial also indicated that his parents were not in the United States at the time of several of these deposits, but the bank statements do not indicate that these funds were wired to this account from Egypt. Tr. 573, 582. Further, Mousa did not produce any evidence that showed these funds were transferred to him from his parents. Doc. 282. Mousa also claimed that two of the deposits were checks for rent that he paid to his parents. Tr. 591. Regarding this testimony, the trial court found that Mousa's "answers were not credible and his actions appeared to be yet another effort to transfer and shuffle assets between family members living outside the country." Doc. 282.

**{¶44}** The record shows that Mousa used this account from the outset as a means to funnel marital funds out of his accounts. While Mousa testified that these funds belonged to his parents, the trial court found this claim to be lacking in credibility. Doc. 282. On review, we are to give great weight to this credibility determination as the trial court was "in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Fordham v. Fordham*, 3d Dist. Logan No. 8-08-17, 2009-Ohio-1915, ¶ 19. For these reasons, we find that the trial court's decision to include these funds in its valuation of the marital estate was supported by some competent, credible evidence. Thus, Mousa's fifth assignment of error is overruled.

*Sixth Assignment of Error*

**{¶45}** Subject to certain exceptions, the divorce decree contains an order that prohibits "distribut[ing] money and other assets out of the Country or to friends and relatives * * *." Doc. 224, 282. Mousa argues that this order is an abuse of discretion.

Legal Standard

**{¶46}** The doctrine of the law of the case "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Siferd v. Siferd*, 3d Dist. Hancock No. 5-18-05, 2018-Ohio-3616, ¶ 20, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). For this reason, "the

-23-

doctrine of law of the case precludes a litigant from attempting to rely on new arguments on retrial which could have been pursued in a first appeal * * *." *Pipe Fitters Union Local No. 392 v. Kokosing Const. Co., Inc.*, 81 Ohio St.3d 214, 218, 690 N.E.2d 515 (1998). This "doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15.

Legal Analysis

{¶47} Mousa presented this exact argument in his prior appeal under his thirteenth assignment of error. *Mousa* at ¶ 44-45. However, his brief did not cite any legal authority in support of his argument. *Id.* at ¶ 46. *See* App.R. 16(A)(7). Thus, this Court overruled his thirteenth assignment of error pursuant to App.R. 12(A)(2). This ruling was "a decision on merits inasmuch as it was a final adjudication * * *" of this issue. *Hawley v. Ritley*, 35 Ohio St.3d 157, 160, 519 N.E.2d 390 (1988). Our ruling on Mousa's thirteenth assignment of error in the prior appeal settled the issue raised in this assignment of error. For this reason, Mousa's sixth assignment of error is overruled.

*Conclusion*

{¶48} Having found no error prejudicial to the appellant in the particulars assigned and argued in the third, fifth, and sixth assignments of error, the judgment of the Family Division of the Marion County Court of Common Pleas is affirmed

as to these issues. Having found error prejudicial to the appellant in the particulars assigned and argued in the first, second, and fourth assignments of error, the judgment of the Family Division of the Marion County Court of Common Pleas is reversed as to these issues. We remand this matter for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part,*
*And Cause Remanded*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**