[Cite as *In re. O.J.H.*, 2016-Ohio-4580.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| IN RE: | : | Appellate Case Nos. 26976 |
| | : | 26977 |
| O.J.H. | : | |
| | : | Trial Court Case Nos. 2015-6311 |
| | : | 2015-7151 |
| | : | |
| | : | (Juvenile Appeal from |
| | : | Common Pleas Court) |
| | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 24th day of June, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN WOODALL, Atty. Reg. No. 0093466, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Appellee

JONATHAN A. HORWITZ, Atty. Reg. No. 0010784, and BARBARA L. HORWITZ, Atty. Reg. No. 0063168, Horwitz & Horwitz, LLC, 20 South Main Street, Springboro, Ohio 45066
        Attorneys for Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} O.J.H., a juvenile, appeals from the trial court's December 23, 2015 order

committing him to the Department of Youth Services (DYS) in two related cases.

{¶ 2} In his sole assignment of error, O.J.H. contends the trial court abused its discretion by committing him to DYS rather than ordering him to participate in a "JCARE" treatment program.

{¶ 3} The record reflects that separate complaints were filed against O.J.H. in October 2015 and November 2015. They alleged that he was a delinquent child for engaging in conduct that would constitute fourth-degree-felony receiving stolen property if committed by an adult. O.J.H. subsequently agreed to admit the violations in those two cases. In exchange, the State agreed to dismiss several other open cases against O.J.H. At the plea hearing, the trial court advised O.J.H., among other things, that it could impose consecutive commitments to DYS for the two admissions, which involved receiving stolen vehicles. Alternatively, the trial court told O.J.H. that it also could send him to JCARE or another treatment facility. After accepting O.J.H.'s admissions, the trial court further advised him as follows:

> And, young man, you have the same comments from me. When I look at what happened, it's sometimes hard for me to believe how many charges a young man can pick up in such a short amount of time and how much trouble you can get yourself in and how little respect you have for your family. Your family didn't commit all these crimes, you did.
>
> You are on the edge today, and so if you find any way between now and [disposition on] December 23rd to get yourself in any trouble upstairs, you'll be on a fast van to prison. I may still send you there, but I don't know yet. If you find a way to get in trouble between now and then, my decision

is very easy.

(Dec. 9, 2015 Tr. at 11-12).

{¶ 4} The trial court subsequently held a December 23, 2015 dispositional hearing. Defense counsel spoke for O.J.H. and requested an opportunity for him to complete the JCARE program. In support of the request, defense counsel noted that 15-year-old O.J.H. had been diagnosed with oppositional defiant disorder (ODD), an issue that counsel asserted had "not been addressed fully or treated fully." (Dec. 23, 2015 Tr. at 17). The trial court rejected the request for placement in the JCARE program. Instead, it ordered O.J.H. committed to DYS for consecutive indefinite terms between 60 days and the child's 21st birthday. In support of its disposition, the trial court addressed O.J.H., his mother, and defense counsel, providing the following detailed explanation:

All right. The Court has reviewed the charges before the Court as well as the youth's lengthy history with the Court. [Defense counsel] Ms. Martin, it is clear that your client has a[n] oppositional disorder. He's had somewhere between 39 and 47 cases with this court.

And so, ma'am, I—I'm—I don't want you mad at me, but I'm going to get you mad, and I'm sorry for that.

When I went over O.J.'s records and what we've already done, he's been on probation multiple times and successfully completed probation, then kept on picking up misdemeanors and felonies.

Your son keeps saying he's involved with gang activity. He's proud of that.

I can't get over the fact that in 2009, he picked up two cases; in 2010,

about eight; in 2011, two felonies; 2012 because he was detained for part of that time, two; in 2013, he picked up about ten, three felonies; in 2014, about six, another felony; in 2015, at least 12 cases.

He's received a [s]ubstantial amount of services. Ms. Martin, during eleven months at CAS, he received eleven months of treatment for all types of issues. He spent multiple days at Nicholas till he ran.

And the quote is, "The youth's response to all of the above interventions have been mostly negative," end quote.

In addition, he had several unofficial interventions that failed. He recently cut off the EHM bracelet and absconded. Then, of course, he picked up all these new cases since he absconded.

It's frankly amazing that I've had the patience this long not to send him to DYS as a result of his multiple felony convictions.

There are days when this Court has to think what's best for the community and not just for the young man. The fact that he's 15 is important to this Court.

I, frankly, think you have an award I should give you today, because I think—I know in my eleven years of sitting up here, I've never had a 15-year-old with so many prior convictions and so many prior felony convictions—dispositions, not really convictions, but dispositions in a juvenile court—who hasn't gone to DYS. I don't—I haven't had anybody 15 years of age, ever, with 47 prior cases, and I see some of the toughest young people of the day.

He's had multiple assessments over the last 18 months, multiple levels of treatment, recommendations for treatment, including his oppositional defiant disorder, attention deficit disorder. He continued to test positive for marijuana month after month after month.

When he appeared before this Court a few weeks ago, he had nine open delinquency cases, and then since that time he picked up another one.

I gave him a chance to go to Nicholas, where he absconded from. I gave him a chance to go to CAS. That didn't go well either. He was placed on EHM five times. Two of those were unsuccessful. He was sent to the Evening Reporting Center twice, the work program multiple times. He had been involved in the Better Business Bureau teen support program, detention, corrections, Nicholas three separate times, CAS three separate times, CCT supervision three times; probation oversight, basically, not— ongoing for the last three years.

Knowing that he is 15, he started his court involvement in March of 2010. So one-third of his life he has been involved with this court already. And I've kept him here. I've kept trying to help him succeed.

I am at the point that I no longer believe there's sufficient services available in this county to help him, so the Court is going to order the following disposition: * * *

Under both felony case numbers, the youth is being committed to the Department of Youth Services for a minimum period of six months to his

21st birthday. These commitments shall run consecutive. * * *

(Dec. 23, 2015 Tr. at 18-22).

**{¶ 5}** Attached to O.J.H.'s appellate brief as Exhibits 1 and 2 are articles from the American Academy of Child & Adolescent Psychiatry and the Mayo Clinic describing oppositional defiant disorder (ODD) and its treatment. In the body of his brief, O.J.H. claims none of the previous programs he has participated in were suitable to address his ODD. He argues that each prior program was deficient in some way and that commitment to DYS will not provide the necessary treatment either. O.J.H. suggests that only the JCARE program can help him overcome his ODD, which O.J.H. believes is at the root of his problems. Therefore, he argues that the trial court abused its discretion in sending him to DYS. He contends that disposition is against the weight of the evidence.

**{¶ 6}** Upon review, we find O.J.H.'s assignment of error to be without merit. As a preliminary matter, the two pieces of literature attached to his appellate brief do not appear to be part of the record below. Therefore, they are not properly before us. *In re Adoption of Z.G.A.*, 2d Dist. Greene No. 2015-CA-51, 2016-Ohio-238, ¶ 29 (recognizing that "[a] party cannot introduce new evidence on appeal"). Nor does the record before us contain any information about the nature of the JCARE program itself or any of the various programs in which O.J.H. previously has participated. But even if we accept, arguendo, that we may take judicial notice of the literature regarding ODD and its treatment, and of the nature of the JCARE program, we still find O.J.H.'s argument unpersuasive.

**{¶ 7}** A juvenile disposition is within the trial court's broad discretion and will not be disturbed on appeal absent an abuse of that discretion. *In re J.W.*, 2d Dist. Montgomery No. 24507, 2011-Ohio-6706, ¶ 6, citing *State v. Matha*, 107 Ohio App.3d 756, 760, 669

N.E.2d 504 (9th Dist.1995). A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *In re C.S.M.*, 2d Dist. Greene No. 2015-CA-28, 2015-Ohio-4608, ¶ 25, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 8} Here the trial court did not abuse its discretion by committing O.J.H. to DYS instead of having him participate in the JCARE program. O.J.H.'s extraordinary history of prior delinquency cases undoubtedly supports the DYS commitment. In addition, the trial court provided a well-reasoned explanation for its disposition, which it imposed only after unsuccessfully trying many less-restrictive alternatives, programs, and treatments. Although defense counsel stressed O.J.H.'s ODD and requested placement in the JCARE program, the trial court acted within its discretion in rejecting that request. The trial court simply was not required to conclude that the JCARE program was the best disposition. In light of its familiarity with O.J.H., the trial court had discretion to conclude that no sufficient services were available in Montgomery County to help him and that commitment to DYS was appropriate.

{¶ 9} O.J.H.'s assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck
Meagan D. Woodall
Jonathan A. Horwitz
Barbara L. Horwitz
Hon. Anthony Capizzi