[Cite as *Sullivan v. Sullivan*, 2020-Ohio-5036.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| LISA ANN-HORVATH SULLIVAN | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28848 |
| | : | |
| v. | : | Trial Court Case No. 2016-DR-1086 |
| | : | |
| BRENDAN E. SULLIVAN | : | (Appeal from Common Pleas |
| | : | Court – Domestic Relations Division) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of October, 2020.

. . . . . . . . . . .

BRIAN A. KRUSE, Atty. Reg. No. 0087411, 10532 Success Lane, Dayton, Ohio 45458
        Attorney for Plaintiff-Appellee

BRENDAN E. SULLIVAN, 1199 Durham Drive, Centerville, Ohio 45459
        Defendant-Appellant, Pro Se

. . . . . . . . . . . .

HALL, J.

{¶ 1} Brendan E. Sullivan appeals pro se from the trial court's judgment entry overruling his objections to a magistrate's decision, finding him in contempt for failing to pay appellee Lisa Ann Horvath Sullivan her portion of his retirement pay, and declining to find her in contempt for interfering with parenting time.

{¶ 2} The record reflects that Brendan and Lisa married in June 1999. They had two children during the marriage, a daughter born in 2001 and a son born in 2008. Lisa filed a complaint for divorce in December 2016. That filing culminated in a June 21, 2018 final judgment and decree of divorce. As relevant here, the divorce decree obligated Brendan, a retired military officer, to pay Lisa 46.52 percent of his disposable military retired pay. Under the decree, he was obligated to pay Lisa directly until the necessary paperwork was filed for the government to pay Lisa directly. The divorce decree also granted Brendan parenting time with both children pursuant to a modified standard order.

{¶ 3} In post-divorce proceedings, Brendan moved to hold Lisa in civil contempt for failing to cooperate and enforce his parenting time with their daughter. For her part, Lisa moved to hold Brendan in civil contempt for failing to pay her the required portion of his retirement pay. Both issues proceeded to a February 22, 2019 hearing before a magistrate. The only two witnesses at the hearing were Brendan and Lisa. Brendan testified that his visits with his daughter decreased significantly after school started in August 2018. Brendan explained that his daughter was being scheduled to work every Tuesday during his mid-week parenting time. He also testified that he had been deprived of his weekend parenting time with his daughter. According to Brendan, when he discussed the issue with Lisa, she attributed the missed visits to their daughter's work

schedule and extracurricular activities.

{¶ 4} With regard to retirement pay, Brendan asserted that he had not signed the required paperwork because he "just got it" the day of the hearing. He later testified that he had not yet signed the paperwork due to "false information." He also disputed the proper computation of his disposable pay. He admitted not knowing how much he had paid Lisa since the filing of the divorce decree. He believed, however, that he had overpaid her because his retirement pay had continued being garnished pursuant to a pre-decree temporary withholding order while he also made direct payments to Lisa. At some point, Brendan "adjusted" what he directly paid Lisa. He did this to account for overpayments due to garnishment and based on his interpretation of the definition of his disposable pay.

{¶ 5} For her part, Lisa testified that Brendan had not paid her anything for June or July 2018. She stated that he had paid her $1,407 in August, nothing in September, and $600 in October. According to Lisa, he then paid her $1,261 in November and December 2018 as well as in January and February 2019. On cross-examination, Lisa stated that after June 2018, all post-decree payments made to her under the temporary withholding order were "refunded" and not actually "received" by her.

{¶ 6} With regard to parenting time, Lisa admitted that her daughter had missed visits with Brendan. Lisa stated that she had encouraged her daughter to see Brendan. She testified, however, that her daughter, who had turned 17 in December 2018, did not want to visit her father and that it was difficult to make her go. Lisa also explained that her daughter worked on multiple week nights, not just on Tuesday evenings when Brendan was to have parenting time. On cross-examination, Lisa noted that her daughter also had

swimming practice every night, which interfered with visitation. Lisa insisted that she had tried to encourage her daughter to visit Brendan but that her daughter was "adamant" about not wanting to go.

{¶ 7} Based on the evidence presented, the magistrate found that Brendan had not paid Lisa the proper amount of his retirement pay and had underpaid her. The magistrate found Brendan in civil contempt and held that he could purge the contempt by paying the deficiency at a rate of $244 per month plus $500 for Lisa's attorney fees. With regard to parenting time, the magistrate declined to find Lisa in contempt. In support, the magistrate cited Brendan's daughter's busy work schedule, extracurricular activities, and lack of desire to visit him.

{¶ 8} Brendan filed objections and supplemental objections to the magistrate's decision. The initial objections alleged in general terms that the magistrate's ruling was contrary to the evidence and an abuse of discretion. In his subsequent supplemental objections, which were filed with the assistance of counsel and after the filing of a transcript, Brendan's entire substantive argument was as follows:

> The Magistrate erred when she overruled Brendan's Motion to Show Cause. The testimony presented clearly demonstrates that the parties' Final Judgment and Decree of Divorce orders parenting time between Brendan and his daughter. There is no dispute that Brendan attempted to exercise his parenting time with his daughter and that Lisa failed to cooperate and enforce Brendan's parenting time. Despite what her daughter may have been expressing, Lisa was obligated to follow the Court's order of parenting time between Brendan and his daughter. If Lisa had legitimate concerns

about Brendan's mental health, she would not have permitted parenting time to continue with one of their children, but not the other. The fact that Brendan continued to exercise parenting time with his son is clear evidence that Lisa did not have a concern about Brendan and was simply refusing to follow the Court's order as it related to the parties' daughter. Brendan provided clear and convincing evidence that Lisa violated the Court's order of parenting time, and the Magistrate should have found Lisa in contempt. The Magistrate's failure to do so was an abuse of discretion on her part.

The Magistrate erred when she found Brendan in contempt for failing to pay Lisa her portion of his military pay. Brendan testified, and the evidence is clear, that he paid what he calculated to be the appropriate amount of disposable income to Lisa as ordered. Brendan testified that for June, July, August, September, and October of 2018 $1,440.00 was deducted by withholding order from his income and paid to Lisa. (Tr. p. 39). This would result in an overpayment to Lisa. Brendan testified that he also began paying Lisa $1,261.00 on top of the amount being withheld from his income in August of 2018. (Tr. p. 40). Lisa acknowledged in her testimony receiving that amount in November and December of 2018 and January and February of 2019. (Tr. p. 50-51). Clearly, from the testimony there is a dispute between the parties as to how much of Brendan's military pay Lisa is entitled to. What else is clear is that Brendan has made substantial payments to Lisa since the time of the divorce and believed that he was in strict compliance with the Court's Final Judgment and Decree of Divorce.

For the Magistrate to then find him in contempt was an abuse of discretion. (September 25, 2019 Supplemental Objections at 5-6.)[1]

**{¶ 9}** The trial court overruled Brendan's objections and supplemental objections in a July 17, 2020 decision and judgment entry. In conducting its own independent, de novo review, the trial court first addressed the retirement-pay issue. Reviewing the parties' divorce decree, the trial court noted:

Relevant to this case, the Decree also awarded Lisa an interest in Brendan's Military retirement benefit, which was in payout status. Brendan was to pay Lisa her share directly until DFAS received a Military Retired pay Division Order, which was to be prepared by a QDRO group. Lisa was awarded 46.52% of Brendan's disposable military retired pay. This deviated from the 50% she was entitled to, as she is responsible for the Survivor Benefit Premium. The Decree further stated that "both parties shall cooperate in executing any [and] all documents required by the military to insure both parties receive all benefits to which she or he may be entitled." It also says, "The Member agrees to not interfere with the Former Spouse's preparation or submission of an application for direct payment to the Former Spouse from the Member's retired or retainer pay pursuant to 10 USC Section 1408. The Member agrees to execute all documents that the Army

---

[1] Parenthetically, we note that Brendan's supplemental objections also referenced as a pending issue a January 18, 2019 ex parte emergency motion to suspend father's parenting time. (*See* Defendant's September 25, 2019 Supplemental Objections at 2.) As Brendan correctly notes on appeal, however, Lisa voluntarily dismissed that motion on February 12, 2019. Therefore, it was not an issue before the trial court, and it is not an issue in this appeal.

and/or DFAS may require to certify that the disposable military retired pay can be provided to the Former Spouse."

(July 17, 2020 Decision and Judgment at 2.)

{¶ 10} The trial court noted that 10 U.S.C. 1408(A) defines "disposable retired pay" as "the total monthly retired pay to which a member is entitled" minus certain listed deductions. After finding no evidence that any specified deductions applied, the trial court reasoned:

> * * * Plaintiff's Exhibit 7 indicates that Brendan's gross pay is $3071.00 per month. $199.95 is deducted for SBP, "Survivor Benefit" that Lisa is responsible for. Lisa's share was reduced from 50% to 46.52% to allow for that responsibility. Lisa's portion of the $3071.00 monthly benefit is $1428.02 per month, which is 46.52% of the gross pay. As Lisa's percentage has already been reduced because of the SBP payment, that amount is not deducted before applying the percentages.
>
> Brendan argues that he has overpaid spousal support, as a withholding order was in effect from the SEA and deducted $1407.00 on 6/1/18, 7/3/18, 8/3/18, and $1326.00 on 9/4/18. In looking at the Support Enforcement Agency Audit (Court's Exhibit 1) on the second page, it indicates that the 6/1/18 payment went directly to the family (Lisa), while the payments on 7/3/18, 8/3/18, and 9/4/18 were returned to Brendan.
>
> Lisa testified to receiving the following payments:
>
> June 2018 = $1407.00 (paid through SEA) Court's Exhibit 1
>
> July 2018 = $0

August 2018 = $1407.00

September 2018 = $0

October 2018 = $600

November 2018 = $1261.00

December 2018 = $1261.00

January 2019 = $1261.00

February 2019 = $1261.00.

Brendan owes Lisa $12,852.18 for the 9 months of military benefit pay. As of the date of the hearing he had actually paid $8,458.00, which leaves an arrearage of $4,394.18.

Brendan is in contempt for failing to pay the retirement benefit ordered. Notably, he has not complied with filing the paperwork necessary to have the military pay Lisa directly. Brendan is sentenced to 30 days in the Montgomery County Jail, with the jail time suspended pending future compliance with the court order. Brendan may purge the contempt by signing and filing the paperwork to have Lisa paid her portion of the retirement directly and paying $500 in attorney's fees to Lisa within 90 days of this order. * * *

(*Id.* at 5-6.)

{¶ 11} With regard to parenting time, the trial court first found the issue moot because the parties' daughter had reached age 18 and been emancipated. (*Id.* at 6.) The trial court nevertheless proceeded to address the issue. Based on the evidence presented, the trial court found that Lisa had attempted to "negotiate" parenting time for

Brendan, but that legitimate issues such as their daughter's school, work schedule, and extracurricular activities had interfered with visits. The trial court then concluded:

> * * * Brendan seems to acknowledge that his daughter is over the age where she is keeping her own schedule and is making her own plans. * * * There is no suggestion that Lisa has manufactured appointments or conflicting obligations to avoid parenting time. Rather, the transcript shows that at one time Brendan called the police to [his daughter's] work to attempt to enforce parenting time with her, with the result that police did not force [his daughter] to have parenting time with her father, but instead arrested him at her employment.
>
> There is no evidence that Lisa withheld parenting time, or actively prevented it. Instead, Lisa attempted to facilitate parenting time between their daughter and Brendan. Lisa is not in contempt and Brendan's motions are overruled.

(*Id.* at 7.)

**{¶ 12}** On appeal, Brendan's opening brief fails to set forth any proper assignments of error, as required by App.R. 16(A)(3). He does, however, identify the following four "issues" for review:

> 1. The Appellant requests the Honorable court's review of 10 U.S. Code 1408. The Appellant is subject to the effects of two Trial Court Orders "Agreed Order Regarding Survivor Benefit Designation and Premium" dated 21 Sept 2017 and the Final Judgment and Decree of Divorce" dated 21 June 2018. In an attempt to bypass 10 U.S. Code 1408 Section (e) protections of

50% of his disposable retired income.

2. The Appellant requests the Honorable court's review of "The Military Pay Division Order" prior to signature. The order is not in compliance with 10 U.S. Code 1408, as it fails to protect 50% of the service member's disposable income, through a manipulation of calculations.

3. The Appellant requests the Honorable court's review and to parse the Decision and Judgment dated 17 July 2020. The judgment has considerable errors, prejudices, and deliberate misrepresentations of facts and law.

4. The Appellant requests the Honorable court to review incidents of corruption, fraud, and judicial misconduct that not only violate the basic right of equality before the law but deny procedural rights guaranteed by the United States Constitution. Determining if the Appellant was represented honestly and fairly throughout the domestic relations court proceedings and if the officers of the court acted properly.

(Appellant's Brief at 5.)

**{¶ 13}** Brendan's subsequent analysis addresses an array of issues that exceeds the scope of his objections to the magistrate's decision. Brendan also has attached to his appellate brief numerous exhibits, some of which do not appear to be part of the record on appeal. To the extent that Brendan's appellate brief includes materials that were not before the trial court, we may not consider them. *In re O.J.H.*, 2d Dist. Montgomery Nos. 26976, 26977, 2016-Ohio-4580, ¶ 6 (recognizing that a party may not introduce new evidence on appeal).

{¶ 14} With regard to the retirement-pay issue, Brendan argued in his objections to the magistrate's decision only that he had paid Lisa "what he calculated to be the appropriate amount," that there was "a dispute between the parties as to how much of Brendan's military pay" Lisa should receive, and that he had "made substantial payments to Lisa since the time of the divorce and believed that he was in strict compliance" with the divorce decree.

{¶ 15} Based on the evidence before the trial court, however, we see no error in its determination that Brendan had not paid Lisa the required amount, despite his belief to the contrary and notwithstanding the fact that he had made some payments. In order to establish civil contempt, it is necessary to establish only the existence of a court order, knowledge of the order, and a violation of it. *Gaver v. Miller*, 2d Dist. Champaign No. 09-CA-46, 2010-Ohio-4275, ¶ 6. Intent to violate the order need not be shown. *Id.*

{¶ 16} The trial court's retirement-pay calculations are supported by the terms of the divorce decree and Lisa's testimony, which the trial court credited. The CSEA audit cited by the trial court also supported its finding about funds the agency withheld from Brendan's pay being returned to him. For his part, Brendan presented no exhibits at the hearing and testified that he did not know how much he had paid Lisa. (Hearing Tr. at 36.) On appeal, Brendan suggests that the trial court violated 10 U.S.C.1408 by awarding Lisa more than 50 percent of his disposable retired pay. But the trial court's calculations fail to support that assertion. He also suggests that Lisa has not paid the "survivor benefit premium" as required. Under the terms of the divorce decree, however, Lisa's percentage of Brendan's military pension was reduced from 50 percent to 46.52 percent to account for her obligation to pay that premium. Thus, Lisa is paying the premium through this

reduction. Brendan further argues that this deduction of 3.48 percent does not cover the full cost of the premium. But Brendan consented to this percentage when he signed the agreed divorce decree containing it. (*See* July 21, 2018 Divorce Decree at 21-22.) If Brendan believes the divorce decree is erroneous, a Civ.R. 60(B) motion would be the proper avenue of relief. As it currently exists, the divorce decree only requires Lisa to pay 3.48 percent, which is being done through the deduction addressed above. Brendan also appears to suggest that other deductions to his disposable retired pay might apply under 10 U.S.C. 1408, but he did not present evidence of any at the hearing. Brendan further asserts that the magistrate and the trial court were prejudiced against him. But he did not raise prejudice by the magistrate in his objections, and we find no basis for such a claim with regard to the decision of the trial court.

{¶ 17} As for the parenting-time issue, Brendan agrees with the trial court that the contempt issue became moot when his daughter turned 18 years old. (Appellant's Brief at 14.) For that reason, he asks us to "sustain the dismissal of the contempt charge for frustration of visitation[.]" (*Id.*) Upon review, we agree with Brendan that the trial court correctly found the parenting-time issue moot. Judicial control over parenting time terminates when a child reaches the age of majority. *In re S.S.*, 2d Dist. Montgomery No. 26997, 2016-Ohio-7328, ¶ 8. That being so, any dispute over parenting time became moot when the parties' daughter turned 18. *Id.* "And because the purpose of a civil contempt motion is to compel compliance with the court's order rather than to punish disobedience, when compliance becomes moot, the contempt proceeding is also moot." *Robinette v. Bryant*, 4th Dist. Lawrence No. 14CA28, 2015-Ohio-119, ¶ 47. Therefore, the trial court did not err in finding the parenting-time contempt issue moot. In light of this

determination, we have no need to address the issue further.

{¶ 18} Based on the reasoning set forth above, we affirm the judgment of the Montgomery County Common Pleas Court, Domestic-Relations Division.

. . . . . . . . . . . . .


DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Brian A. Kruse
Brendan E. Sullivan
Hon. Denise L. Cross