[Cite as *Novak v. Novak*, 2023-Ohio-2811.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

JAYME NOVAK,

    PLAINTIFF-APPELLANT,                 CASE NO.  7-23-01

    v.

TIMOTHY L. NOVAK,                      O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Henry County Common Pleas Court
Domestic Relations Division
Trial Court No.  19 DR 0026

Judgment Affirmed

Date of Decision:   August 14, 2023

APPEARANCES:

    *Jeffrey P. Nunnari* **for Appellant**

    *Timothy L. Novak,* **Appellee**

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, Jayme Novak ("Jayme"), appeals the judgment of the Court of Common Pleas of Henry County, Domestic Relations Division, granting her complaint for divorce from defendant-appellee, Timothy L. Novak ("Timothy"), and granting Timothy's counterclaim for divorce. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Jayme and Timothy were married on August 29, 2008, and have one minor child born as issue of the marriage. On April 30, 2019, Jayme filed a complaint for divorce. On June 18, 2019, Timothy filed his answer and waived service. In his answer, Timothy consented to Jayme's complaint based upon the grounds of incompatibility.[1] However, on January 15, 2020, Timothy filed a counterclaim for divorce.

{¶3} On June 3, 2021, the matter proceeded to a final divorce hearing. During the hearing, Jayme and Timothy, each represented by counsel, entered into the following stipulations that are relevant to this appeal: 1) that September 17, 2018 is the *de facto* date of termination of the marriage and 2) that all assets and debts would be valued as of that date. Relevant to this appeal, the parties proceeded on the

---

[1] On January 6, 2020, Timothy filed a complaint against Paul Conklin ("Paul") in the Henry County Common Pleas Court, General Division, in case number 2020CV0006, as a result of a dispute relating to a parcel of real estate located at 530 South East Street, McClure, Ohio, tax-parcel number 36-009542.0040. (*See* Ex. 17). This complaint alleged that certain land-installment-contract violations were present under R.C. 5313.02 and 5313.06 and that the contract is unconscionable. (*Id.*). Paul counterclaimed for breach of contract. (June 3, 2021 Tr. at 220). Ultimately, the parties settled the dispute through mediation. The settlement amount of $19,671 was deposited into Timothy's attorney's trust account.

following disputed issue: whether Jayme was entitled to one-half interest of the parties' *equity* in the marital home on the basis that Timothy breached his contract concerning the real estate occurring after September 17, 2018 (i.e., the *de facto* date for termination of the marriage). Put more plainly–the parties argued how the trial court should handle the lump-sum settlement held in escrow resulting from litigation involving the parties' real-estate issue.

{¶4} On March 25, 2022, the magistrate issued a decision determining that neither party had "clean hands" regarding the equity issue in the parties' real estate and recommended that the remaining balance of the lump-sum settlement be divided equally between the parties with Jayme and Timothy each receiving one-half of the $17,671 balance or $8,835.50 each.

{¶5} On April 8, 2022, Timothy filed objections to the magistrate's decision, which he later supplemented. Specifically, Timothy requested that Jayme's portion of the settlement to be used to pay one-half of the early-withdrawal penalty assessed by the Internal Revenue Service ($7,291) before it was to be disbursed to Jayme.

{¶6} On April 19, 2022, Jayme filed her objections to the magistrate's decision, which she supplemented. Specifically, Jayme challenged the trial court's valuation of the marital home. She argued that the trial court should value the marital home as of September 17, 2018 (i.e., the *de facto* termination of marriage date) and not utilize the lump-sum settlement amount held in escrow as the value.

{¶7} In its independent review, the trial court modified the property distribution and determined that the remaining balance of $15,662 held in escrow be evenly divided between the parties with each party *now* receiving $7,831.[2] Thereafter, on December 22, 2022, the trial court entered the decree of divorce and a final judgment entry.

{¶8} It is from this judgment Jayme timely appeals, presenting the following assignment of error for our review.

### Assignment of Error

**The Trial Court Erred To The Prejudice Of The Appellant By Failing To Award To Her Her One-Half Equity Interest In The Former Marital Residence As Of The Date Of The *De Facto* Termination Of The Parties' Marriage.**

{¶9} In her sole assignment of error, Jayme contends that the trial court abused its discretion by valuing the parties' interest in the marital home on a date that is different from the stipulated *de facto* termination date (i.e., September 17, 2018). Specifically, Jayme argues that the trial court erred by determining that the marital home value was based upon the amount of Timothy's mediated settlement.

### *Standard of Review*

{¶10} The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each

---

[2] The trial court deducted the transcript cost (needed for objection) from the settlement.

divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). Thus, when we review a trial court's determination in a domestic-relations case, we generally apply an abuse-of-discretion standard. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130 (1989). An abuse of discretion suggests that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶11}** The process of fashioning an equitable division of marital property will generally require a trial court to assign or adopt valuations for marital assets. *Gilsdorf v. Gilsdorf*, 3d Dist. Marion No. 9-13-34, 2014-Ohio-5000, ¶ 11. As long as the trial court's division of property is supported by some competent, credible evidence, we will not disturb the trial court's decision absent an abuse of discretion. *Huelskamp v. Huelskamp*, 3d Dist. Auglaize No. 2-09-21, 2009-Ohio-6864, ¶ 31. "'"Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances."'" *Lotz v. Lotz*, 3d Dist. Auglaize No. 2-14-06, 2014-Ohio-5625, ¶ 18, quoting *Dollries v. Dollries*, 12th Dist. Butler Nos. CA-2012-08-167 and CA2012-11-234, 2014-Ohio-1883, ¶ 10, quoting *Baker v. Baker*, 83 Ohio App.3d 700, 702 (9th Dist.1992).

**{¶12}** "The valuation of property in a divorce case is a question of fact." *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 27. "Accordingly, a trial court's decision pertaining to the valuation of property will be

reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence." *Id.* "If the parties to the divorce submit evidence in support of conflicting valuations, the trial court 'may believe all, part, or none of any witness's testimony.'" *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 14, quoting *Huelskamp* at ¶ 27. Because the trial court is in the best position to evaluate the credibility of witnesses, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct." *DeWitt v. DeWitt*, 3d Dist. Marion No. 9-02-42, 2003-Ohio-851, ¶ 11.

*Factual Background*

**{¶13}** While married, the parties resided in the real estate located at 530 South East Street, McClure, Ohio. To acquire that home, Timothy executed a "Contract for a Deed" on December 13, 2014, for a total purchase price of $112,000 to be paid over 10 years. The contract was with Paul Conklin ("Paul"), Timothy's Friend. (*See* Def. Ex. 10). Then, on December 18, 2014, Timothy created an **"AGREEMENT TO PURCHASE REAL ESTATE"** in order to borrow $40,000 from his retirement-annuity plan for the down payment. (*See* Def. Ex. 9). The annuity loan required repayment through monthly payments, which Jayme was responsible for making. However, in 2017, Jayme stopped making the payments. Consequently, Timothy's loan was restructured as an early withdrawal of his

retirement and a penalty tax was assessed. Thereafter, Timothy was notified by the Internal Revenue Service on November 23, 2020 reflecting changes to his 2017 tax return resulting in a tax deficiency (of $20,250) for the 2017 tax year. (*See* Def. Ex. H).

{¶14} On March 24, 2021, the parties' filed their 2020 joint-tax return showing an overpayment credit (i.e., tax refund) in the amount of $5,668. (*See* Def. Ex. C). The refund was applied against the Timothy's tax deficiency reducing it to $14,582, which did not include compounded interest.

{¶15} Meanwhile, Jayme vacated the marital home on September 17, 2018 so Timothy took over the loan payment to Paul. Then, in January 2019, Timothy defaulted on the payments resulting in the civil action (in case number 2020CV0006) filed by Timothy. Ultimately, Timothy and Paul reached a settlement (through mediation) in the amount of $19,671, which was deposited in Timothy's attorney's trust account. Importantly, Jayme was not a party to the contract or agreement nor did she participate in this civil litigation though she was provided notice. Nevertheless, at the time of trial in the instant action, the marital home had been sold by Paul to another buyer.

*Analysis*

{¶16} In a divorce proceeding, the division of the parties' property is governed by R.C. 3105.171 and involves a two-step process. First, the trial court

must determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Secondly, the trial court must equitably allocate the marital and separate property.

**{¶17}** In order to achieve an equitable division of marital property, the trial court must select a beginning and an ending date that defines the duration of the marriage. R.C. 3105.171(A)(2) defines "[d]uring the marriage" to mean:

> (a)  Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
>
> (b)  If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property.

R.C. 3105.171(A)(2)(a)-(b). If the trial court selects dates that it considers equitable in determining marital property, "[d]uring the marriage" means the period of time between those dates selected and specified by the court. "The decision to use the final hearing date as the valuation date or another alternative date pursuant to R.C. 3105.171(A)(2)(a) and (b) is discretionary and will not be reversed on appeal absent an abuse of discretion." *Schneider v. Schneider*, 110 Ohio App.3d 487, 493 (11th Dist. 1996). A trial court may use a *de facto* termination date when such a date would be equitable. *Berish v. Berish*, 69 Ohio St.2d 318, 320 (1982). Otherwise, it

is presumed the date of the final divorce hearing is the appropriate termination date of the marriage. *Id.*

**{¶18}** Here, the parties do not dispute that their equitable interest in the marital home constituted marital property nor are they disputing that they stipulated to a *de facto* termination of date of marriage. Rather, Jayme assigns error regarding the trial court's valuation of that marital property. Jayme maintains that the trial court abused its discretion by using a date *other than* the stipulated date to value the marital property. Jayme argues that the real estate should have been valued at $65,800 (i.e., the $40,000 down payment plus 43 monthly payments of $600), instead of the reduced-lump-sum amount from the mediation settlement (i.e., $15,662) arrived at in 2020 prior to the final divorce hearing (held on June 3, 2021). Hence, Jayme is arguing that the trial court reduced her equity interest in the marital home from $32,900 to $7,831 by using the wrong termination date of the marriage. We disagree.

**{¶19}** Importantly, R.C. 3105.171 expresses no specific way for the trial court to determine valuation. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 32, citing *Crim v. Crim*, 5th Dist. Tuscarawas No. 2007 AP 06 0032, 2008-Ohio-5367, ¶ 36 and *Focke v. Focke*, 83 Ohio App.3d 552, 555 (2d Dist. 1992). *See also Fisher v. Fisher*, 3d Dist. Henry No. 7-01-12, 2002-Ohio-1297, *9. An appellate court has no authority to require the adoption of any particular method

of valuation. *See Kapadia* at *id.*, citing *Focke v. Focke*, at 552 and *James v. James*, 101 Ohio App.3d 668, 681 (2d Dist. 1995). Instead, a trial court must have a rational, evidentiary basis for assigning value to marital property. *Kapadia* at *id.*, citing *McCoy v. McCoy*, 91 Ohio App.3d 570 (8th Dist.1993).

{¶20} Indeed, there was no evidence presented in the trial court regarding the value of the marital property at issue. Timothy testified (at trial) that he purchased the marital home for a purchase price of $112,000 in 2014. According to Timothy, this amount was above the value of the home because he purchased it by a perceived land contract. It is evident to us that conventional financing (i.e., a bank loan) did not occur in this case to develop a reasonable value of the property as of the date of purchase. Further, Timothy testified that he had no idea what the fair-market value of the property was at the time of the purchase. Importantly, neither Jayme nor Timothy presented any evidence regarding the marital home's valuation as of September 17, 2018 (the *de facto*-marriage-termination date).

{¶21} It is clear that the trial court based its valuation on the evidence presented at trial regarding the martial property since the parties' interest in the property was only the lump-sum settlement in 2020. The trial court's valuation was equitable under the facts presented.

{¶22} Notwithstanding Jayme's contention otherwise, the trial court based its equitable determination of the valuation of the marital property on the evidence

that was introduced at trial. The record supports that the trial court's evaluation of the real estate is supported by competent, credible evidence, and therefore is not against the manifest weight of the evidence. Consequently, the trial court did not abuse its discretion in its division of the martial property under the circumstances presented in this appeal.

**{¶23}** Accordingly, Jayme's sole assignment of error is overruled.

**{¶24}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**