[Cite as *Adams v. Adams*, 2025-Ohio-5574.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

LEAH M. ADAMS,

    PLAINTIFF-APPELLEE,

  v.

TODD A. ADAMS,

    DEFENDANT-APPELLANT

CASE NO. 14-24-41

OPINION AND
JUDGMENT ENTRY

---

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 23-DR-0035

Judgment Affirmed

Date of Decision:  December 15, 2025

---

APPEARANCES:

    *Todd A. Adams,* Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Todd A. Adams ("Todd"), appeals the September 25, 2024 judgment entry of the Union County Court of Common Pleas, Domestic Relations Division, granting plaintiff-appellee, Leah M. Adams ("Leah"), a divorce from Todd. On appeal, Todd challenges the trial court's parenting schedule, calculation of child support, and award of spousal support. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Todd and Leah were married on July 15, 2000, and have two children together. Their oldest child is an adult and their youngest child, J.A., attained the age of majority during the pendency of this appeal (in January 2025). Leah filed a complaint for divorce on February 21, 2023. Todd filed his answer on April 6, 2023.

{¶3} On May 9, 2024, the matter proceeded to a final hearing before a magistrate. At the final hearing, the parties agreed to the distribution of marital property as set forth in the stipulated balance sheet marked as Joint Exhibit I. The parties' agreement was placed on the record. Specifically, the parties agreed that Leah would retain the assets outlined in her column (including the marital home) and Todd would retain the assets outlined in his column. Since the stipulated balance sheet shows an unequal distribution in favor of Leah, the parties agreed that Leah would make an equalization payment to Todd in the amount of $45,011.33. The parties further agreed that the equalization payment would be due 120 days after

Todd brought the outstanding household expenses related to the marital home current and notified Leah in writing.[1] The outstanding household expenses included the monthly mortgage payments, property taxes, and utilities. The parties agreed that Todd would have 30 days to bring these expenses current through May 9, 2024. As to the indebtedness owed on the marital home, the parties agreed that Leah would have 120 days to make payment in full or refinance the debt. The parties further agreed that the 120-day time period would commence after Todd brought the outstanding household expenses current and provided written notice to Leah.

{¶4} After the parties' agreement was placed on the record, the magistrate noted that the stipulated balance sheet was signed by both Todd and Leah. Thereafter, both Todd and Leah testified that they believed the property distribution as set forth in the stipulated balance sheet to be fair and equitable, and requested that the marital property be divided accordingly.

{¶5} The remaining issues to be heard at the final hearing included parenting time, child support, and spousal support. Both parties testified at the hearing. As to parenting time, Leah requested a flexible parenting schedule since J.A. is 17 years old. Leah testified that J.A. should continue to reside with her in the marital home and spend as much time with Todd as J.A. desires. Leah explained that J.A. would benefit from a flexible parenting schedule because she will be starting her senior

---

[1] On June 2, 2023, the trial court issued a temporary order whereby Todd was ordered to pay "the household expenses (mortgage, taxes, insurance, and HOA fees)" and utilities. (Doc. No. 27).

year of high school and is involved in many activities that take up a lot of her time. Leah testified that J.A. is very mature and can be trusted to make good decisions. In contrast, Todd testified that an alternating weekly parenting schedule would be best for J.A. Todd explained that he rented an apartment approximately two miles from the marital home so that he could have equal parenting time with J.A. At the request of the parties, the magistrate conducted an in camera interview with J.A.

{¶6} As to the parties' income, Leah testified that she left the job market in 2004 to care for the parties' first-born child, and remained out of the job market until 2019. Leah further testified that she is currently employed fulltime with Dublin City Schools. Leah works with special-needs children and is paid $1,383 twice a month ($33,192 per year). Leah also works during the summer months and is paid $1,440. Leah's total annual income is $34,632. Todd testified that he believes Leah is underemployed and should be earning $60,000 a year based on her bachelor's degree. As to his own employment status, Todd retired in October 2023 at the age of 55. Todd testified that the he did not make the decision to retire based on the possibility of having to pay spousal support to Leah. At the time of his retirement, Todd's annual salary was $143,157.

{¶7} With respect to spousal support, Leah requested that Todd be ordered to pay $3,000 a month. Leah testified that she came up with this amount after preparing a monthly budget and tracking household expenses over a period of several months. Leah stated that she wanted to retain the marital home to keep

things as normal as possible for J.A. during the remainder of her time in high school. Todd disagreed with Leah's requested amount of spousal support. Todd testified that $3,000 a month is "a very aggressive number" because he has "no new income." (May 9, 2024 Tr. at 88). Todd did not have "a number in mind for spousal support" but requested that the magistrate consider "the existing assets that we can each live off of independently." (*Id.*).

{¶8} Leah testified that she provides health insurance for J.A. through her employment with Dublin City Schools. Leah requested that Todd be ordered to pay child support pursuant to the guideline amount. Leah further requested that the parties be ordered to pay J.A.'s uncovered medical expenses according to their income share percentages. Todd testified that he pays for all of J.A.'s expenses under the temporary orders. Todd requested that this arrangement continue after the divorce such that payment of child support to Leah would not be needed.

{¶9} On July 3, 2024, the magistrate issued a decision with recommendations. As to parenting time, the magistrate found J.A. to be "a mature, well-balanced, [and] wise child." (Doc. No. 105). The magistrate determined that "regularly going back and forth, especially overnight, would unfairly disrupt [J.A.'s] schedule and her senior year." (*Id.*). The magistrate concluded that Todd's "proposed plan, and the possibility of [J.A.] going back and forth each week, is not in the best interest of the child, and should be overruled." (*Id.*). The magistrate

recommended that the trial court approve and adopt Leah's flexible parenting schedule.

**{¶10}** With respect to spousal support, the magistrate recommended that Todd pay spousal support of $3,000 a month ($36,000 a year), commencing on July 1, 2024. The magistrate made this recommendation after considering the factors set forth in R.C. 3105.18(C)(1). Specifically, the magistrate considered the parties' income and found that Leah experienced "lost income production capacity" because she "did not work out of the home for approximately 16 years." (Doc. No. 105 at Ex. A). The magistrate rejected Todd's argument that Leah is underemployed and found "no compelling evidence" that she should be earning $60,000 a year. (*Id.*). The magistrate considered that Leah is 50 years of age, Todd is 56, both are healthy, and each have a bachelor's degree. The magistrate found that the parties established a middle-class to upper-middle-class standard of living during the marriage. The magistrate further found that the stipulated balance sheet distributed marital property equally between the parties, with each party receiving approximately $500,000 in retirement accounts.

**{¶11}** In recommending that Todd pay spousal support of $3,000 a month, the magistrate determined that the award would terminate on the death of either party or upon further court order. The magistrate further recommended that the trial court "retain jurisdiction to modify or terminate the spousal support award upon future consideration." (Doc. No. 105).

{¶12} As to child support, the magistrate recommended that Todd pay to Leah $921.90 a month in child support, plus cash medical support of $20.01 a month, commencing on July 1, 2024. The magistrate further recommended that Leah continue to provide health insurance for J.A. and pay the first $250 a year for any uninsured medical expenses, with the balance thereof paid 60% by Todd and 40% by Leah. The magistrate also recommended that extraordinary child expenses be paid 60% by Todd and 40% by Leah, and that Todd be entitled to claim J.A. as his dependent for 2024 if he is current in his support obligations.

{¶13} Todd filed his objections to the magistrate's decision on July 16, 2024, and supplemented the objections on August 21, 2024. Leah filed her sole objection on July 25, 2024, requesting that the effective dates of spousal support and child support be modified from July 1, 2024 to May 10, 2024.

{¶14} On September 25, 2024, the trial court overruled all of Todd's objections and sustained Leah's sole objection.

{¶15} Todd filed his notice of appeal on October 24, 2024. He raises seven assignments of error for our review. For ease of discussion, we will address some of the assignments of error together.

**First Assignment of Error**

**The trial court abused its discretion and erred as a matter of law when it did not assign a specific schedule of parenting time for the non-residential parent (Father/Appellant). The trial court's decision is not in the best interest of the child, against the manifest weight of evidence and demonstrates prejudice against the father.**

{¶16} In his first assignment of error, Todd argues that the trial court abused its discretion by not ordering equal parenting time for the parties' youngest child, J.A. At the time of the parties' divorce, J.A. was a minor. During the pendency of this appeal, however, J.A. reached the age of majority. "Judicial control over parenting time terminates when a child reaches the age of majority." *Sullivan v. Sullivan*, 2020-Ohio-5036, ¶ 17 (2d Dist.). Thus, we decline to rule on the issues raised in Todd's first assignment of error based on the doctrine of mootness. *Siferd v. Siferd*, 2017-Ohio-8624, ¶ 12 (3d Dist.).

### Second Assignment of Error

**The trial court erred and abused its discretion, by applying inconsistent standards to determine Husband (Defendant) was i[m]puted to his full time pre-retirement income while not citing that Wife (Plaintiff) is voluntarily underemployed.**

### Fifth Assignment of Error

**The trial court erred and abused its discretion, in awarding the amount of child support.**

{¶17} In his second and fifth assignments of error, Todd argues that the trial court abused its discretion in the calculation of child support. Specifically, Todd argues that the trial court abused its discretion by imputing potential income for him of $143,157, but not imputing additional income for Leah. Todd claims that Leah is voluntarily underemployed and "should be imputed to full-time income based on

her earning potential with a Bachelor's degree in business." (Appellant's Reply Brief at 5).

*Standard of Review*

{¶18} "[A] trial court has broad discretion in determining child support obligations, which will not be disturbed absent an abuse of discretion." *Miller v. Dendinger*, 2021-Ohio-546, ¶ 44 (3d Dist.). An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Similarly, "the question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112 (1993).

*Analysis*

{¶19} When issuing an order of child support, the trial court "shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119." R.C. 3119.02. "There is a 'rebuttable presumption' that the amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is the correct amount of child support due." *Warner v. Warner*, 2003-Ohio-5132, ¶ 16 (3d Dist.), citing R.C. 3119.03. The trial court may order an amount of child support that deviates from the guideline amount

if, after consideration of the factors set forth in R.C. 3119.23, the court determines that the guideline amount "would be unjust or inappropriate and therefore not be in the best interest of the child." R.C. 3119.22.

{¶20} "To calculate the amount of child support owed, the domestic-relations court must first determine the annual income of each parent." *Ayers v. Ayers,* 2024-Ohio-1833, ¶ 13. "Income" means either of the following:

> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

R.C. 3119.01(C)(10). "Potential income" for a parent who is voluntarily unemployed or voluntarily underemployed includes "[i]mputed income that the court . . . determines the parent would have earned if fully employed." R.C. 3119.01(C)(18)(a). In making this determination, the trial court must consider the following criteria:

> (i) The parent's prior employment experience;
>
> (ii) The parent's education;
>
> (iii) The parent's physical and mental disabilities, if any;
>
> (iv) The availability of employment in the geographic area in which the parent resides;
>
> (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
>
> (vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

R.C. 3119.01(C)(18)(a)(i)-(xi).  Thus, when calculating a parent's potential income, the trial court must make two specific determinations.  "First, the court must determine that a parent's unemployment or underemployment was voluntary." *Ayers* at ¶ 14.  "Second, the court must determine what the parent would have earned if fully employed." *Id.*

{¶21} In this case, the magistrate recommended that Todd be ordered to pay child support and cash medical support in the amounts set forth in the child-support worksheet attached as Exhibit B to the magistrate's decision.  The child-support worksheet lists Todd's income as $143,157—being the amount he was earning at the time of his retirement.  In overruling Todd's objection to the magistrate's recommendation, the trial court stated as follows:

> Defendant admits that he left his long-term employment with Verizon [sic] on October 3rd, 2023, approximately eight months after the complaint for divorce herein was filed.  Defendant *was only 55 years old* at the time.  At the time he had financial responsibilities for the support of his daughter [J.A.], and his wife of 23 years, Leah, both of

whom deserve to be supported in the manner established by Husband's normal income. The Court does not find the reasons given by Husband to be sufficient to quit his job, certainly considering all the important obligations he had to support his daughter and long-term Wife. Of importance to note, is that Defendant, in his objection, states as a reason supporting quitting his job that he had "adequate wealth acquired during his time in the workforce." Additionally, Defendant states that he "has earned enough assets to be financially capable of retiring."

The Court finds that Defendant Todd A. Adams is **voluntarily unemployed**; this term includes being voluntarily underemployed.

(Emphasis in original.) (Doc. No. 115).[2] After finding that Todd is voluntarily unemployed, the trial court adopted the magistrate's calculations on the child-support worksheet and ordered Todd to pay child support of $921.90 a month, plus cash medical support of $20.01 a month.

{¶22} On appeal, Todd argues that the trial court abused its discretion by imputing potential income for him of $143,157, but not imputing additional income for Leah. Todd contends that Leah is underemployed. Todd further argues that a deviation from the guideline amount of child support is warranted due to his retirement status and "the combination of spousal support and child support results in [Leah] receiving more than 50% of the potential net income available to the parties." (Appellant's Brief at 29).

{¶23} With respect to imputing potential income for Todd, the record shows that Todd left his employment eight months after Leah filed a complaint for divorce.

---

[2] We note that the record reflects that Todd's employer in October 2023 was Vertiv. The record further reflects that Todd retired from Verizon in 2019, and began his employment with Vertiv in 2021.

Todd testified at the final hearing that his annual salary was $143,157 at the time he decided to retire. Based on the timing of Todd's decision to retire and his ongoing responsibility to support Leah and J.A., the trial court determined that Todd is voluntarily unemployed and imputed income for him based on his annual earnings at the time of his retirement.

{¶24} Notably, the trial court did not impute additional income to Leah because it did not find her to be underemployed. In fact, the magistrate rejected Todd's assertion that Leah is underemployed and the record supports this decision. Leah testified at the final hearing that she left the job market in 2004 to care for the parties' first-born child, and remained out of the job market until 2019. Leah further testified that she is currently employed fulltime with Dublin City Schools and her annual income is $34,632. In calculating the guideline amount of child support, the magistrate used Todd's imputed income of $143,157 and Leah's annual income of $34,632, plus the award of spousal support of $36,000. Further, the child-support worksheet shows the parties' income share percentages as being 61.77% for Todd and 38.23% for Leah.

{¶25} Based on the foregoing, we conclude that the trial court did not abuse its discretion by finding that Todd is voluntarily unemployed and by imputing income for him. We further conclude that the trial court did not abuse its discretion by adopting the magistrate's calculations on the child-support worksheet and ordering Todd to pay child support based on the guideline amount.

{¶26} Accordingly, Todd's second and fifth assignments of error are overruled.

**Third Assignment of Error**

**The trial court erred and abused its discretion, in awarding $3,000 per month for spousal support to Wife (Plaintiff).**

**Fourth Assignment of Error**

**The trial court erred and abused its discretion, in awarding lifetime spousal support to Wife (Plaintiff).**

{¶27} In his third and fourth assignments of error, Todd argues that the trial court abused its discretion by ordering him to pay "lifetime spousal support" to Leah in the amount of $3,000 a month.  (Appellant's Brief at 26).

*Standard of Review*

{¶28} "Trial courts have broad discretion concerning an award of spousal support." *Petersen v. Nonnenman*, 2025-Ohio-794, ¶ 60 (3d Dist.).  "Therefore, a trial court's decision related to spousal support will not be reversed absent an abuse of discretion."  *Id.*  As previously stated, an abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable.  *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

{¶29} An award of spousal support is governed by R.C. 3105.18.  "'[S]pousal support' means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that

is both for sustenance and for support of the spouse or former spouse." R.C. 3105.18(A). "In divorce . . . proceedings, upon the request of either party and after the court determines the division or disbursement of property . . . , the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). Additionally, R.C. 3105.18(C)(1) contains a list of factors to be considered in fashioning an award of spousal support:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
>
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> (g) The standard of living of the parties established during the marriage;
>
> (h) The relative extent of education of the parties;
>
> (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

**{¶30}** In this case, the magistrate recommended an award of spousal support of $3,000 a month. The magistrate further recommended that the trial court retain jurisdiction over the award as to the amount and duration. In overruling Todd's objections to the magistrate's recommendations, the trial court stated as follows:

The Magistrate in his Decision specifically considered all the factors set forth in [R.C.] 3105.18. Said Decision states clearly the Magistrate's consideration of this long-term marriage, with spouses of vastly different earnings and earning capacities. Careful consideration was given to Wife's current monthly budget and need. Husband did not provide the Court with the required budget, nor did Husband provide any evidence concerning an appropriate tax bracket to compute net income from his prior gross income.

Upon the evidence received the Magistrate recommended establishing a current amount of spousal support, with jurisdiction reserved as to length and amount. Again, this is a marriage of (now) 24 years, with

> vastly different income and income capacities. It is reasonable in a long-term marriage with such other facts as herein, to establish a current amount, and reserve jurisdiction as to amount and duration. It is certainly possible that in the future a court may find that spousal support is no longer appropriate, or that the amount should be reduced.

(Doc. No. 115). Thus, the trial court adopted the magistrate's recommendations and ordered Todd to pay spousal support of $3,000 a month. The trial court further reserved jurisdiction "to modify or terminate said award as to both amount and duration." (*Id.*).

{¶31} On appeal, Todd argues that the trial court erred by not considering the income available to Leah from the retirements accounts distributed to her as part of the division of marital property. Todd further argues that the trial court erred by not considering Leah's ability to work more hours and earn a higher income. Todd contends that an award of spousal support in the "maximum amount of $933 per month" is "reasonable and equitable" in this matter. (Appellant's Brief at 25). Todd further contends that a "fixed duration of five years is appropriate." (Appellant's Reply Brief at 11).

{¶32} We conclude that the trial court did not abuse its discretion by ordering Todd to pay spousal support of $3,000 a month. The record shows that the magistrate carefully considered each of the factors listed in R.C. 3105.18(C)(1) in fashioning the award of spousal support. Furthermore, Todd's concerns about paying "lifetime spousal support" are unfounded. The trial court specifically made the award of spousal support modifiable and retained jurisdiction as to the amount

and duration. Thus, Todd is free to file a motion to modify the award of spousal support at any time in the future and, upon a finding of changed circumstance of either party, the trial court has the authority to change the award as to the amount and duration. See R.C. 3105.18(E) and (F).

**{¶33}** Accordingly, Todd's third and fourth assignments of error are overruled.

### Sixth Assignment of Error

**The trial court erred and abused its discretion, by backdating the effective date of spousal and child support to May 10, 2024 instead of the date of filing of the Final Decree on September 25, 2024.**

**{¶34}** In his sixth assignment of error, Todd argues that the trial court abused its discretion by ordering spousal support and child support to be paid retroactively from May 10, 2024. Todd contends that the support orders should commence on the date of the divorce decree.

### *Standard of Review*

**{¶35}** "The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case." *Novak v. Novak,* 2023-Ohio-2811, ¶ 10 (3d Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). "Thus, when we review a trial court's determination in a domestic-relations case, we generally apply an abuse-of-discretion standard." *Novak* at ¶ 10. An abuse of discretion suggests that the trial

court acted unreasonably, arbitrarily, or unconscionably. *Blakemore*, 5 Ohio St.3d 217 at 219.

*Analysis*

**{¶36}** Here, the parties agreed at the final hearing that Todd would have 30 days to bring the outstanding household expenses related to the marital home current through May 9, 2024. Thereafter, on June 12, 2024, the trial court issued a temporary order stating that "[e]ffective May 10, 2024, until the time of refinancing or otherwise removing [Todd] from the mortgage associated with [the marital home], [Leah] shall be solely responsible for all expenses related to said property." (Doc. No. 103).

**{¶37}** On July 3, 2024, the magistrate issued his decision and recommended that spousal support and child support should commence on July 1, 2024. Leah objected to the magistrate's decision, arguing that the support orders should commence on May 10, 2024 since that is the date she became responsible for all expenses related to the marital home. In sustaining Leah's objection, the trial court determined that "it would be inappropriate" for Leah to be without support for herself and the parties' child for a period of months. (Doc. No. 115). Consequently, the trial court ordered "that both the spousal support and the child support awarded herein shall each be effective May 10th, 2024." (*Id.*).

**{¶38}** Based on the facts and circumstances of this case, we conclude that the trial court did not abuse its discretion by ordering spousal support and child

support to be paid retroactively from May 10, 2024. In light of the financial burden placed on Leah related to the marital home, the trial court's decision is not unreasonable, arbitrary, or unconscionable.

**{¶39}** Accordingly, Todd's sixth assignment of error is overruled.

**Seventh Assignment of Error**

**The trial court erred and abused its discretion by omitting transactions from the final decree that Husband (Defendant) receives from the agreed marital balance sheet (Joint Exhibit I). Only the transactions that benefit Wife (Plaintiff) were written into the final decree.**

**{¶40}** In his seventh assignment of error, Todd argues that the trial court abused its discretion by ordering him to transfer his ownership interest in the marital home to Leah without addressing the existing mortgage. Todd further argues that the trial court erred by not establishing a due date for the $45,011.33 equalization payment from Leah.

*Standard of Review*

**{¶41}** "'A trial court has broad discretion in the allocation of marital assets and debt, and an appellate court will not disturb a trial court's judgment absent an abuse of discretion.'" *Snider v. Snider*, 2025-Ohio-77, ¶ 63 (3d Dist.), quoting *Moon v. Moon*, 2024-Ohio-2428, ¶ 5 (10th Dist.). Again, an abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶42}** In this case, the parties agreed to the division of marital property as set forth in the stipulated balance sheet marked as Joint Exhibit I. Moreover, the parties' agreement was placed on the record at the final hearing held on May 9, 2024. In particular, the parties agreed that Leah would retain the assets outlined in her column (including the marital home) and Todd would retain the assets outlined in his column. The parties further agreed that Leah would make an equalization payment to Todd in the amount of $45,011.33. As to the timing of the equalization payment, the parties agreed that the equalization payment would be due 120 days after Todd brought the outstanding household expenses related to the marital home current and notified Leah in writing. With respect to the indebtedness owed on the marital home, the parties agreed that Leah would be responsible for either making payment in full or refinancing the debt. The parties further agreed that Leah would have 120 days to make payment in full or refinance the debt, and that the 120-day time period would commence after Todd brought the aforementioned household expenses current.

**{¶43}** Given that the parties' agreement regarding the division of marital assets and the timing of same was placed on the record, we conclude that the trial court's decision to order Todd to transfer his ownership interest in the marital home to Leah within 14 days of the filing of the divorce decree is not unreasonable, arbitrary, or unconscionable.

**{¶44}** Accordingly, Todd's seventh assignment of error is overruled.

**{¶45}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WALDICK, P.J. and MILLER, J., concur.**

Case No. 14-24-41

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.   The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  *See* App.R. 30.

William R. Zimmerman, Judge

Juergen A. Waldick, Judge

Mark C. Miller, Judge

DATED:
/hls